THE STATE OF MARYLAND *vs.* WILLIAM E. MAYHEW, PRESIDENT OF THE FARMERS AND PLANTERS BANK OF BALTIMORE.—*June* 1845.

The act of March session 1841, ch. 23, provided for a general assessment of all the real and personal property within this State, and directed, that the capital stock of the several banks, and other incorporated institutions of the State, should be assessed to its owners at its cash value, and taxed at one-fourth of one per centum.

All the property of such banks, &c., the stock of which was thus assessed and taxed, being exempted from taxation, the taxation of such stock is constitutional.

To relieve the proprietors of such stock, and facilitate the collection of the tax thus imposed, the act of 1843, ch. 289, made it the duty of the president, (or other proper officer) of such corporations, semi-annually, to set apart, and withhold out of the dividends, or profits, the amount of the tax levied on such stocks, and pay the same to the treasurer of the State.

The act of 1843, is a legitimate exercise of power, incident to the sovereign right of levying taxes for the support of government.

The State *vs.* Mayhew —1845.

By the act of 1843, the place and mode of levying and collecting such tax are changed; it was no longer collectable where the stockholders resided; it ceased to be a debt or duty chargeable on them : they were exonerated from all personal liability for its payment: the stock, itself, stood exempt from its payment, and the security of the State therefor, became contingent.

For the recovery of such tax, the State has no lien on the stock; can maintain no action at law, either against the stockholder, bank, or any officer of the bank, in his official character ; nor an action for money, had and received against any such officer, in his individual capacity.

But the State has a legal right to be paid out of the dividends declared, or profits made, the amount of the tax on the assessed value of such stock, and for the assertion of such right, having no appropriate legal remedy, is entitled to the writ of *mandamus* against the president or other proper officer of any such corporation.

The president of a bank, &c., is not, by the nature of the duty imposed upon him, by the act of 1843, created a State officer, a collector of the taxes due by the stockholders of the bank.

The object of the act was to command such president, he being already in possession thereof, to pay to the treasurer of the State the amount of State taxes in his hands, which, under the act of 1843, he had no authority to pay to any other person.

The General Assembly has the right, by legislation, to impose upon all property within the State, a just and proportionately equal public tax; to provide all means, details necessary for its speedy collection, by summary process of execution, or other reasonable or available means.

A power exercised by the General Assembly, from the adoption of our Constitution till the present time, a period of nearly seventy years, ought to be deemed almost conclusive evidence of its possession by that body.

A cotemporaneous construction of the constitution of such duration, continually practised under, and through which, many rights have been acquired, ought not to be shaken, but upon the ground of manifest error and cogent necessity.

Where the law provided for the valuation of bank stock, and it had been valued accordingly, and an act of Assembly prescribed the rate of taxation, and directed who should pay it, it cannot be said that the tax on such stock has not been levied : it is a legislative levy, wholly irrespective of the ownership of the stock.

As soon as a dividend is declared, the right of the State to so much of it as is required to be paid on account of the stock taxed, is fixed and indefeasible, and over-rides all other liens, claims or rights, by whomsoever asserted, unless, perhaps, it were in conflict with a preferred claim of the *United States.*

A citizen is not necessarily discharged from the obligation to perform a duty enjoined, by law, for the public good, because it imposes on him some additional labor, trouble and expense; as to perform militia duty, vote at

the election of public officers, furnish true statements to assessors, obey the summons of executive officers, or arrest felons: in these, and other instances, the citizen must obey the law.

APPEAL from *Baltimore* County Court.

This was an application for a writ of *Mandamus*, upon the petition of the State. It alleged, that the *General Assembly* of *Maryland*, by the act of 1841, ch. 23, entitled, "*An act for the general valuation and assessment of property in this State, and to provide a tax to pay the debts of the State;*" among other things enacted, that all stocks or shares, in any bank or company, incorporated by the said State, together with all other property thereby subjected to assessment and taxation, should be valued agreeably to the directions of said act, and chargeable according to such valuation, with the public assessment; which said assessment or tax, by the State of *Maryland*, was, by the said act of Assembly, fixed at twenty cents, or one-fifth of one per cent. in every hundred dollars worth of assessable property, for each and every year thereafter, to be collected as therein prescribed; and, that afterwards, by another act of the General Assembly of *Maryland*, made and passed at December session 1841, ch. 328, a further additional annual tax, of five cents in the hundred dollars, to be levied and collected in the same manner as the first mentioned tax, was imposed upon all the property assessed by the first mentioned act of Assembly, the said taxes collectively amounting to twenty-five cents, or one-fourth of one per cent. annually, in every hundred dollars worth of such property.

Your petitioner further states, that by the second section of the said first mentioned act, the city of *Baltimore*, in said State, was divided into assessment districts, as therein specified; that by the ninth section thereof, it was declared to be the duty of the assessors, appointed by said act, to value all such assessable property at its full, cash value, in the names of the owners thereof respectively; that by the sixteenth section thereof, it was enacted, that for the purpose of valuing the stock of banking, and other private corporations, held by non-resident stockholders, it was thereby declared and understood, that the stock

62 v.2

of a banking, insurance, or other corporation, usually termed a moneyed institution, should be situated at the place in which the principal office for transacting the business of such corporation should be situated, and for the effectual collection of the taxes assessed on the stock of private corporations, held by non-residents, it was enacted, by the seventeenth section thereof, among other things, that the stock of corporations, liable to assessment under said act, held by persons, non-residents of said State, should be valued at its actual cash value, to, and in the name of such stockholders respectively; but, that the tax assessed on said stock should be levied and collected from said corporation, unless paid by such stockholders, and should be charged to such stockholders respectively, and be a lien on their respective stocks: that by another act of the General Assembly of *Maryland*, made and passed at December session 1841, ch. 281, it was made the duty of the president, or other proper officer of every bank, or other private corporation in the said State, to set apart and withhold, out of the dividend of the stock of such corporations, the amount of the tax levied by the first mentioned act semi-annually, and pay the same to the collector of the county, city, or district, in which such bank or corporation might be situated: that the General Assembly of *Maryland*, in substitution for the former enactments on the subject, at its December session 1843, made and passed an act, entitled, "An act entitled a supplement to the act entitled an act to facilitate the collection of a portion of the tax levied in pursuance of the act passed at March session 1841, ch. 23," wherein it is enacted, that it should be the duty of the president, or other proper officer of the banks, and of all other of the incorporated institutions of this State, semi-annually, after the passage of the said act, (which passed on the 8th March 1844,) to set apart, and withhold, out of the dividends or profits, when dividends are not declared on the stock of said banks, or other incorporated institutions, the amount of the tax levied on the stocks of said banks, and other incorporated institutions, under the act of March session 1841, ch. 23, and its supplements, without reference to the place of residence of

the stockholders therein, and to pay the said tax to the trea-surer of the said State, who should give proper receipts therefor: that at the time of the passage of the first mentioned act of Assembly, there was, and from thence hitherto has been, a certain bank of the said State, duly incorporated by the laws of the said State, under the name and style of the *Farmers and Planters Bank of Baltimore*, and that its principal office for the transaction of its business then, was and is situated in the said city of *Baltimore*, in the State aforesaid, in the fourth assessment district of said city; and that by the force and exigency of said first mentioned act, the stock of said bank then was, and is situated in said city and district, and that *William E. Mayhew, Esq.*, of the city of *Baltimore*, from thence hitherto has been, and yet is, the president of the said bank.

Your petitioner further states, that shortly after the passage of the said first mentioned act of Assembly, the stock of the said bank was duly valued by the proper, then assessors, under said act, at the city, and assessment district aforesaid, and that twenty-three thousand, four hundred and twenty-five shares of the stock of said bank, being the number of assessable shares, were then, by them, valued at $19.50 a share, being the cash value thereof, amounting, altogether, to the sum of $456,787.50, and that the same valuation, under the said act, has ever since subsisted, and is now in force; that at the time of the passage of the last mentioned act of Assembly, of December session 1843, and ever since the said shares of stock, so valued as aforesaid, were, and are liable to pay the said taxes, under the two first above mentioned acts of Assembly, to the said State, amounting, annually, to $1141.96; and that since the passage of the said last mentioned act of Assembly, the said bank has made great profits, and has declared three several dividends, that is to say, a dividend on the 1st July 1844, and dividends on the 1st day of January and July respectively, in the year 1845, each of which said dividends, far exceeded the amount of such taxes due on the said shares of stock at the time such dividend was declared: that by force of

the last mentioned act of Assembly, it has been, and is, the duty of the said *Wm. E. Mayhew*, as such president of the said bank and its proper officer in that behalf, ever since the passage of such act, semi-annually to set apart and withhold, out of such dividends or profits, the sum of $570.98, being the moiety of the taxes, annually since accruing and levied on the said stock at such valuation as aforesaid, and pay the same to the treasurer of the said State, upon his proper receipts therefor, for the benefit of your petitioner; but although the said treasurer has always been, and is, ready and willing to give such receipts therefor, the said *William E. Mayhew*, so being such president of the said bank, as aforesaid, has utterly refused, and still refuses, to comply with the exigencies of the said last mentioned act, and semi-annually to set apart and withhold such last mentioned sum out of such dividends or profits for such taxes as aforesaid, and pay the same over to the said treasurer of the said State, for the benefit of your petitioner, and the sum of $1712.94, for such taxes, as aforesaid, accruing since the said passage of the said last mentioned act, remains in arrear, and wholly unpaid to the said treasurer of the said State. *Prayer* for a writ of *Mandamus*, to be directed to the said *Wm. E. Mayhew* of the city of *Baltimore*, in the State of *Maryland, President of the Farmers and Planters Bank of Baltimore*, commanding and enjoining him, according to the exigency of such last mentioned act of Assembly, semi-annually to set apart and withhold out of the dividends, or profits, when dividends are not declared upon the said shares of stock so valued as aforesaid, the sum of $570.98, being the amount of the taxes levied on the said shares of stock of the said bank, under the act of March session 1841, ch. 23, and its supplements, and pay over the same to the treasurer of the State of *Maryland*, upon his proper receipt therefor; and, also, to pay over to the said treasurer of the State of *Maryland* the said sum of $1712.94, for such taxes on the said shares of stock so remaining in arrear and unpaid, as aforesaid, upon his proper receipt therefor, according to the exigency of such act of assembly.

And, thereupon, on motion of the State of *Maryland*, aforesaid, the county court, (LeGrand, A. J.,) passed the following order, to wit:

Ordered, by *Baltimore* county court, this 29th day of November, A. D., 1845, that the *President of the Farmers and Planters Bank* shew cause, on or before three o'clock this day, why *Mandamus* should not issue, as prayed, in the aforegoing petition, provided a copy of this order, and said petition, be served on the president aforesaid, on or before two o'clock this day.

The parties aforesaid, by their attorneys aforesaid, file in court here, the following agreement and admission, to wit, (annexed to the petition aforesaid:) It is admitted, that the facts set forth in the above petition, are true. It is also admitted, to be taken with the said facts, into the consideration of the court, that to pay over the tax, as required by the acts of Assembly, mentioned in the within petition, would be attended with additional labor, trouble and expense, to the said *Mayhew*, as president of the said bank. It is agreed, that all proceedings preliminary to a peremptory *Mandamus*, are waived on both sides, and that the above petition, with this statement, be submitted to the said court for its judgment, and that said judgment shall be rendered *pro forma*, against the State, with liberty of appeal.

On the 29th November 1845, in compliance with the agreement of parties filed, it was ordered by the court, that the rule for the *Mandamus*, is discharged *pro forma*, with costs, with the right of appeal reserved to the State.

The State prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By RICHARDSON, attorney general of *Maryland*, for the State, and

By DULANY and McMAHON for the appellee.

DORSEY, J., delivered the opinion of this court.

We deem it unnecessary to decide a number of questions, argued with great ability, by the counsel of both parties; because, from the view we have taken of the record before us, they do not arise in this case.

According to our interpretation of the act of Assembly in question, the legislature have not attempted to exercise some of the powers so vehemently complained of, on the part of the defendant.

The act of March session 1841, c. 23, having provided for a general assessment of all the real and personal property within the State, directed, that the capital stock of the several banks, and other incorporated institutions of this State, should be assessed at its cash value. And all the property of such banks, and incorporated institutions, the stock of which was thus assessed and taxed, being exempted from taxation, as far as concerns the present controversy, the taxation of such stock, was decided to be a constitutional tax, both by the Supreme Court of this State, and of the *United States.* Difficulties having arisen from the mode provided, for the collection of the tax on said stock; and the peculiarly fluctuating ownership of such property, frequently rendering it a matter of controversy, by whom the tax ought to be paid, to remedy such evil; and to relieve the owners of stock, who might sell the same, from the inconvenient necessity of going to the county town, to attend a meeting of the justices of the levy courts, commissioners of the tax, or county commissioners, (as the case may be,) and furnishing proof of the sale and transfer of the stock, that it might be deducted from the amount, standing against them on the books of assessment; and to relieve the stockholders, as well as the other tax payers of the counties, city and district, from the payment of a levy of from three to ten per cent., on the amount of tax levied on such stock; and with a view, to provide a far more just, convenient and safe mode of collecting the public revenue, arising from the capital stock of banks, and other incorporated institutions in the State, the legislature, by the first section of the act of 1843, chap. 289, enacted, "that it shall

be the duty of the president, or other proper officer of the banks, and of all other incorporated institutions of this State, semi-annually, after the passage of this act, to set apart and withhold out of the dividends, or profits, when dividends are not declared, on the stock of said banks and other incorporated institutions, the amount of the tax levied on the stocks of said banks, or other incorporated institutions, under the act of March session 1841, chapter 23, and its supplements, without reference to the place of residence of the stockholders therein, and to pay the said tax to the treasurer of this State, who shall give proper receipts therefor." And by the third section of the said act, it is enacted, "that on the first day of June next, the several levy courts, commissioners of the tax, and the appeal tax court of *Baltimore*, shall deduct from the amount of the assessment of property, in the several counties, *Howard District*, and the city of *Baltimore*, so far as relates to the taxes imposed, for the use of this State, the assessed value of the aforesaid stocks, and that thereafter, the accounts for taxes due this State, shall not include the tax upon the aforesaid stocks."

To the provisions of the first section of the said act of Assembly, a great variety of objections have been taken, and elaborately and ingeniously pressed upon the court.

First it is insisted, that the defendant, from the nature of the duty imposed on him, is created a state officer, a collector of the taxes, due by the stockholders of the bank. To this proposition, we cannot yield our assent. Neither the design, nor operation of the law, will warrant such an interpretation of it. Its object was, not to require the officer of the bank, to collect taxes due to the State; but to command him, he being already in possession thereof, to pay to the treasurer, the amount of state taxes in his hands; which, under the act of 1843, he had no authority to pay to any other person. By the act of March 1841, c. 23, the stock of the banks, owned by residents of the State, was assessed to the individual stockholders; and the tax thereon, was to be collected from them, in the counties, city or district in which they respectively resided. But, under

the act of 1843, the place and mode of levying and collecting this tax, are entirely changed. It was no longer collectable where the stockholders resided: it ceased to be a debt, or duty chargeable upon them: they were exonerated from all personal liability, for the payment thereof. Even the stock itself, stood exempt from the payment of the tax. The only security which the State had for its payment, was contingent; it depended entirely upon the contingency of the banks declaring dividends, or making profits, without declaring dividends. And out of those dividends or profits, by terms of the most explicit enactment, the tax on the stock, was directed to be paid to the treasurer of the State, by the proper officer of the bank; that is, by him, in whose hands the dividends and profits of the bank, are placed for safe keeping, and payment over to the persons entitled to receive the same. And if the objections, taken to the constitutionality of this act of Assembly, be not sustainable, he was as imperatively bound to pay the tax in question, in the manner directed, as he would have been, had the board of directors enjoined him to do so.

The next objection taken to this act of Assembly is, that it is in violation of the sixth article of the Bill of Rights, which declares, "that the legislative, executive, and judicial powers of the government, ought to be forever separate and distinct from each other:" and of the twenty-first article of the same instrument, which provides, "that no free man ought to be taken or imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land."

According to the argument in behalf of the defendant, if carried out to its legitimate extent, the legislature may cause an assessment to be made, and prescribe the rate of taxation, but there its powers upon the subject cease. It must be left to some judicial tribunal of the State, to ascertain the amount of indebtedness of the individual tax payers; and when thus ascertained, the payment of taxes, can only be enforced by a resort to the judicial tribunals of the State, in the same manner that debts are recov-

ered by one citizen from another. If such be the constitutional restrictions imposed on the powers of taxation, the sovereign authority of the State is virtually disrobed of its most important and invaluable rights, of the very essence of sovereignty. The delays and expenses, incident to such a system of collecting the public taxes, would effectually paralyze the right arm of government, and render it wholly incompetent, to the accomplishment of the all important objects for which it was constituted. That the General Assembly of *Maryland* has the right, by legislation, to impose upon all property within the State, a just, and proportionately equal public tax; and, in like manner, provide all the means, details, necessary for its speedy collection, by summary process of execution, or other reasonable or available mode is, we believe now, for the first time, made the subject of a doubt. That such powers should have been exercised, without being questioned, from the time of the adoption of our Constitution, till the present time, a period of nearly seventy years, ought to be deemed almost conclusive evidence of their being possessed by the legislature. A cotemporaneous construction of the Constitution of such duration, continually practised under, and through which, innumerable rights of property have been acquired, ought not to be shaken, but upon the ground of manifest error and cogent necessity. If imperious necessity be appealed to, in relation to the existence of such a power, it sustains it with resistless force. And if a case can be conceived, in which, both as to time and circumstances, this court would shrink, with repugnance, from the innovation now urged upon it, this is that occasion.

It has been contended, that the tax, for the recovery of which the present proceedings were instituted, has never been levied; and, therefore, the officer of the bank is neither authorised nor bound to pay it to the treasurer. The answer to this suggestion is, that the acts of Assembly have made the levy. The assessment of the stock having been made, and the rate of taxation prescribed, and the obligation for its payment being imposed on the bank officer; every thing has been

63   v.2

done by the legislature, which is requisite for it to do, to render
the tax available to the State.   The tax, by the act of Assem-
bly, is directed to be paid out of the dividends or profits of
the stock, not by the owners thereof.   It is a legislative levy,
wholly irrespective of the ownership of the assessable stock.
When the General Assembly confide to the levy courts, or coun-
ty commissioners, the power and duty of making what is called
"the levy of the taxes;" that is, of making out the "tax list,"
and delivering a copy thereof to the collectors; it is done, not
because the legislature do not possess the power of discharg-
ing the same duty itself, by express legislative enactment, but
because the power can be more conveniently and advisedly
exercised by the justices of the levy courts and county com-
missioners, to whose custody are confided the books of assess-
ment containing all transfers of assessable property; without
which transfer books, no "levy list," or "tax list," (as it is in-
discriminately called,) can be correctly made out.

It is also contended, that a *Mandamus* ought not to issue in
this case, because the officer of the bank, to whom it will be
directed, is ignorant of, and has no means of ascertaining the
amount of the tax to which the State is entitled; the stock of
the bank being assessed at different values, in the different
portions of the State, where the stockholders reside.   If this
could, in any case, (considering the facility with which the
requisite information could be obtained,) furnish a ground for
refusing to comply with the requisitions of the act of 1843; it
certainly has no application to the case now before us.   Here
all the facts stated in the petition are admitted to be true; and
the petition expressly states, that all the stock of the bank
was duly valued, by the proper assessors, at $19.50 per share,
so that the same rate of tax is chargeable in respect to each
and every share of the stock of the bank.   There is, there-
fore, in this case, no pretence for the alleged inability of the
officer of the bank, to comply with the requirement of the act
of Assembly, by reason of any diversity in the assessed value
of the shares of bank stock.   And there is still less reason, in
the refusal of the proper bank officer to pay the State tax, on

the ground of the injustice done to the stockholders of this bank, by the tax laws of the State. By taxing the stock of the bank, instead of its bills, bonds, notes, judgments, mortgages, and all its other property, real and personal; the bank does not pay, perhaps, one half of the tax it would pay, if its property were assessed and taxed in the same manner that similar property of all citizens of the State is now assessed and taxed.

It is further said, that the act of 1843, if complied with, would render taxation unequal, by compelling the tax of the stockholders to be paid in cash, whilst other tax payers possess the power of paying in coupons. Such was not the design, nor is it the practical operation of that act of Assembly. The legislature, by it, neither intended to increase nor diminish the amount of the tax levied upon bank stock. And the treasurer of the State receives, from the officers of the banks, coupons in payment of such taxes, in the same manner that they are received in payment of taxes due by the citizens of the State.

Neither is the objection to the act of 1843 well founded, that it compels the officer of the bank to pay the tax upon the whole capital stock of the bank, although portions of it might be exempt from taxation, as being owned by other banks or incorporated institutions, (the stock of which was taxed,) or as being owned in such manner, as to be exempt from taxation under the first section of the act of March 1841, chapter 23. All transfers of bank stock, and the names of its owners, appear upon the books of the bank, and should any of its stock be exempt from taxation, as above mentioned, the officer of the bank is not bound to pay the tax upon it, nor would the treasurer of the State insist upon its payment. But the conclusive answer to such an objection, in this case, is this, that the petition states, and its statements are admitted to be true, the assessment and tax of the stock in 1843, and its then and continued liability to such assessment, up to the time of the filing of the petition now before the court.

Another of the reasons, assigned for the non-payment of the tax to the treasurer, is, that the bank may have a lien upon the dividends for a balance due to it by the owner of the stock. The obvious answer to this is, that as soon as a dividend is declared, the right of the State to so much of it as is required to be paid on account of the tax, is fixed and indefeasible, and over-rides all other liens, claims, or rights by whomsoever asserted, unless, perhaps, it were in conflict with a preferred claim of the *United States.*

It has been urged, too, as an obstacle to the issuing of a *Mandamus* in this case, that the board of directors may have forbidden the payment of the tax by the officer of the bank. The record presents no such fact to the court, and we would very reluctantly credit its existence. Had such a probibition been made apparent to the court, we feel assured it would have lent a willing ear to an application of the attorney general, for the interposition of the court in removing the difficulty.

The only remaining ground on which the officer of the bank places his refusal to comply with the mandates of the law, is that a compliance would subject him to "additional labor, trouble and expense." To what extent, or in what way such "additional labor, trouble and expense" would be incurred, is left wholly unexplained. A citizen is not necessarily discharged from the obligation to perform a duty, enjoined by law, for the public good, because it imposes on him some additional labor, trouble and expense. The law requires a certain portion of its citizens to perform militia duty, by attending public musters on certain days in the year, which subjects them to much more labor, trouble and expense, than that imposed upon the officer of the bank in the discharge of the duty, now the subject of our consideration. The law requires every voter to go to the polls and vote at the election of public officers. It also enjoins upon every taxable inhabitant of the State, the duty of furnishing to assessors, a true and detailed statement of all his property liable to taxation, and of all such property in his possession, though belonging to other persons. A duty, in many instances, attended with far more labor,

trouble, and expense, than is required of the bank officers, (under the act of 1843,) in consequence of the particular situation they occupy, in regard to important rights and interests of the State. Every citizen summoned by an executive officer to aid him in the preservation of the public peace, or in the service of civil or criminal process, or in the arrest of a felon, is bound to perform the service required, although it may subject him to danger, as well as "additional labor, trouble and expense." Yet in all these, and numerous other instances of the kind, which might be enumerated, nobody ever doubted the obligation of the citizen to obey the mandates of the law. Suppose, instead of providing for the collection of taxes, through the instrumentality of collectors, the legislature had dispensed with collectors, and required all those bound for the payment of taxes to pay them to the treasurer, at the treasury of the State. Could the constitutionality of such legislation be, for a moment, the subject of a doubt? We think not. For the time, manner of payment, and collection of the public taxes, it is the peculiar province of the legislature to provide. It may, in its discretion, make the tax levied, a charge or lien on the property assessed, or its profits, or a personal charge or debt to the owner thereof. In the case of bank stock, the tax upon it is made, as it were a lien upon its dividends or profits, and to be paid thereout; and such dividends, or profits, being in the hands of the proper officer of the bank, he is required, by the act of 1843, to pay the portion thereof, to which the State is entitled for taxes, to the treasurer of the State. In this enactment, we can discover nothing unjust or oppressive, or in anywise conflicting with any thing to be found in the Bill of Rights, but we regard it as the legitimate exercise of a power incident to the sovereign right of levying taxes for the support of government.

The defendant having failed to inform us how, or to what extent, the duty imposed on him by the act of 1843, has subjected him to "additional labor, trouble and expense," let us inquire whether this "additional labor, trouble and expense" be so unreasonable, unjust and onerous, that this court, in the

exercise of a sound, judicial discretion, ought to deny to the State, the process that has been applied for, in its behalf. To do this, we must ascertain what are the acts to be done by the bank officer, in discharge of the duty assigned him by the act of Assembly? He must multiply the number of shares, to wit: 23,425 by $19.50, the assessed value of each share; and of the amount thus obtained, ascertain what is the one-fourth of one per cent. Having thus discovered the amount of the State tax if paid in money, with the prices current before him, which in a newpaper or otherwise, is to be found in every banking institution, he sees the price of coupons, and calls on a broker, or drops a line to a broker to call on him, purchases a coupon for the amount of the State tax, encloses it in a letter to the treasurer, and the next day, or the day after, receives a letter from the treasurer, containing the appropriate receipt. The postage on this letter being five cents, is, as it ought to be, paid by the bank: so that in truth, not a farthing of expense is incurred by the officer of the bank, in the discharge of this, his most onerous duty. He then divides the sum paid for the coupon, by the aforementioned number of shares, and the quotient is the amount of the tax attributable to each share of stock. He then directs the clerk of the bank, by whom the statement is made out for the payment of the dividend, to deduct from the dividend of each stockholder the amount, arrived at by multiplying his number of shares by the sum payable as the tax on each share, and there ends all the "additional labor, trouble and expense," of which the bank officer complains. If the entire labor and trouble thrown, in this case, upon the officer of the bank, were to be wholly performed by a single competent clerk, he would not be thus occupied for the half of a day. And if the directors of the bank would, as they ought to do, cause the coupon, for the payment of the tax on its stock, to be purchased before declaring the dividend, the officer of the bank, would be saved more than half the labor and trouble cast upon him by the act of 1843. This is a computation of the duties of the bank officer as to the first dividend, which, in a great degree, supercedes the

The State *vs.* Mayhew.—1845.

necessity of similar calculations at subsequent dividends. The services thus rendered by the bank officer, though nominally for the State, are in truth performed in the way of his vocation, for the benefit and as the agent and representative of his employers, of whom the State might lawfully have exacted, the services thus performed by him. Under such circumstances, can this court do otherwise, than regard this alleged "additional labor, trouble and expense," to the officer of the bank, as a ground wholly insufficient, to avoid the payment of taxes most justly due to the State.

The agreement of the counsel filed, in this cause, renders it unnecessary for us to say any thing, as to the propriety of applying for a *Mandamus* against the president, instead of some other officer of the bank.

The only remaining question to be considered, (if indeed a question it can be called,) is whether, in the case before us, a *Mandamus* is the appropriate remedy, to restore the State to those rights, which are illegally and unjustly withheld from it. For the recovery of the tax on the stock of the bank, the State has no lien on the stock; it can maintain no action at law against the stockholder; nor against the bank; nor against any officer of the bank in his official character. Nor can it maintain an action for money had and received, against any officer of the bank, in his individual character. Yet, under the act of 1843, we are of opinion, that it has a clear and unquestionable right, a legal right, to be paid out of the dividends declared, the amount of the tax imposed on the assessed value of the stock of the bank. And for the assertion of this right, it has no appropriate legal remedy. According then to all the authorities, a *Mandamus* is the proper remedy; and it would be a reproach to our system of jurisprudence, if it were denied to the State on the present occasion.

The *pro forma* judgment of the county court is reversed, with costs, and a procedendo awarded.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.