# Franklin McVeagh

*v.*

# The City of Chicago *et al.*

1.  Constitutional law—*general rule of construction.*  The presumption is, that every law passed by the legislature is in conformity with the constitution, unless the contrary be shown, and it must be a clear and palpable case, before the court will undertake to decide an act of a co-ordinate department of the government was beyond their constitutional competency to enact.

2.  Taxation of national bank shares—*under the act of* 1867.  The provision of the act of June 13, 1867, requiring the assessment of shares in banks to be made for the year 1867, with regard to the ownership and value of such shares on the first day of July, 1867, instead of the first day of the preceding April, does not violate the principle of equality and uniformity established by the constitution.

3.  But if in making an assessment under that act, the valuation of the shares was determined on the first day of July, and the law required it should be

determined as of the first day of April, it would be necessary for the owner of the shares, calling upon a court of equity for relief, to show that he has been injured thereby—that by reason thereof, the valuation put upon them on the first day of July, was greater than they justly bore on the first day of April preceding, or that he was compelled to pay a double tax, first on the money listed for taxation on the first day of April, and again on the bank shares he purchased with this same money between that day and the first day of July.

4.   Where a particular species of property has been omitted from taxation for a given year, the legislature have the power to pass a special law to cure the omission.

5.   So the tax on national bank shares not having been legally assessed for the year 1867, by reason of the defective law under which it was attempted, the act of June of that year, was designed to supply the omission, and there was no want of constitutional power to enact it.

6.   In assessing the shares in national banks under State authority, it is not necessary that they shall be included in the list of other personal property, so that upon aggregating the personal property, shares included, the taxable portion would be shown by what remained after the deduction for debts was made, as provided by the general revenue law.   It is quite immaterial on what portion of the list these shares are found.

7.   Under the act of 1867, a system of taxation for bank shares was designed, peculiar to itself, and independent of the general revenue system of the State. The only deduction allowed by the act, from the shares of each owner, is a proportionate sum for the real estate in which a portion of the capital might be invested.   No deduction for debts owing by the owner can be made from the valuation of his bank shares.

8.   Nor is this discrimination in not allowing a deduction from the valuation of bank shares, for debts owing by the owner, as is allowed to be made from the valuation of other personal property under the general revenue law of the State, contrary to the limitations imposed by the proviso of the 41st section of the national banking act of June 3, 1864, which provides that shares in those banks shall not be taxed under State authority " at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such States."   The " rate " of taxation is not affected by the different modes adopted to ascertain the taxable value of the various kinds of property.

9.   Should a collector be compelled to sell the bank shares for the non-payment of taxes, under the act of 1867, and the bank refuse to transfer them to the purchaser on the books of the bank, a court of chancery, on a bill filed for such purpose, would compel the transfer.

10.   Or if the taxes upon such shares remain unpaid through the dividends, as provided by this law, the State could by *mandamus* compel the officers of the

bank to appropriate the dividends, or such portions as might be necessary to pay the taxes.

11.  Notice of assessment.  No actual notice of the assessment of bank shares is required to be given to the owner, the act requiring only that notice shall be published in a newspaper a certain length of time.

Writ of Error to the Circuit Court of Cook county; the Hon. Erastus S. Williams, Judge, presiding.

The opinion contains a sufficient statement of the facts in this case.

Mr. Melville W. Fuller and Messrs. Mattocks & Mason, for the plaintiff in error.

Mr. S. A. Irvin, for the defendants in error.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was a bill in chancery in the Cook Circuit Court, instituted by Franklin McVeagh against the City of Chicago, to restrain the collection of the taxes assessed by the authorities of that city, on certain shares of stock held by complainant in the Commercial National Bank of Chicago, on the allegation, among others, that the act of the general assembly, of June 13, 1867, was unconstitutional and void, so far as it provides for taxation in respect to bank shares for the year 1867, and that the assessment was void because contrary to the first proviso of section 41 of the National Banking Act, in these particulars, that the shares in question were not included in the valuation of the personal property of the owner, and that the assessment and tax are void, because the shares are placed in the valuation at a greater rate than other moneyed capital, no deductions being allowed for debts due and owing by the shareholders, and because the act of 1867 is contrary to the national bank law.

A demurrer was sustained to the bill, and a judgment rendered against complainant for costs, to reverse which, he has brought the record here by writ of error, assigning as error, sustaining the demurrer to the bill.

The several points made by the bill, are argued at great length, and we have given them full consideration.

The first objection implies a want of constitutional power in the legislature to enact the law. That must be shown by the party making the charge, the presumption being that every law passed by the legislature is in conformity with the constitution, unless the contrary be shown, and it must be, as this court has often decided, a clear and palpable case; before this court will undertake to decide an act of a co-ordinate department of the government was beyond their constitutional competency to enact.

The argument of counsel in support of this objection, is founded on the fact that, inasmuch as appellant's shares were not assessed on the first day of April, 1867, they could not be assessed on the first day of July thereafter, for the year 1867, for that would violate the principle of equality and uniformity established by the constitution.

An examination of the revenue law of the State, has not shown us that the shares should be assessed for taxation on the first day of April. Indeed, it would be impracticable so to do, as the assessment may require months to complete it. This assessment was for municipal, not State purposes, and if the charter of the city required the assessment to be made on the first day of April, and it was not so done, or it could not be, then it should be shown, that an injury has resulted by making the assessment on a different day.

Admit the valuation of appellant's shares was determined on the first day of July, and the law required it should be determined as of the first day of April, surely it would be necessary for appellant, calling upon a court of equity for relief, to allege and prove he has been injured thereby—that

41—49TH ILL.

by reason thereof, his shares have been valued too high, or that there was a difference in their value on the two specified days, being higher on the first day of July than they were on the first day of the preceding April, whereby he would be compelled to pay a greater tax. No such matter is alleged in the bill of complaint. If no injury has been occasioned by the act of which complaint is made, or omission to act in strict compliance with the law, it is certainly incumbent on complainant to show, that in his case the tax assessed against him at the time charged, violated the principles of uniformity and equality required to be observed by constitutional provisions and by decisions of this court. The great central idea of our constitution, in this behalf, as we have before said, in *C., B. & Q. R. R. Co.* v. *The Supervisors of Bureau County,* 44 Ill. 229, was equality of taxation, so that one man or corporation should not be required to pay a greater tax on the same description of property, than another in the same locality.

In what way the taxation here complained of violates this principle, is not perceived. It is not alleged or pretended that in taxing appellant's shares, a discrimination has been made to his prejudice, or that he has paid a double tax, first on the money listed for taxation on the first of April, and again on the bank shares he purchased with this same money between that day and the first day of July.

We cannot perceive wherein the act violates the constitution. It is not claimed appellant has paid any tax whatever upon the money with which he purchased these shares, nor is it shown they have been valued higher than like shares in the same institution, or that the valuation put upon them on the first day of July, was greater than they justly bore on the first day of April preceding.

It is admitted, taxation of a property owner should be by the operation of a general law affecting all classes of people, but where a particular species of property has been omitted from the taxation for a given year, where is the inhibition upon

the legislature to pass a special law to cure the omission? Such is the nature of the law in question. The tax on bank shares was not properly assessed, they were not, in fact, assessed by reason of the defective law under which it was attempted. This act was designed only to supply that omission, and we must give it effect, not being convinced of the want of constitutional power in the legislature to enact it.

The next objections are, that the sixth section of the act is void, being contrary to the limitations imposed by the proviso of the 41st section of the National Banking Act of June 3, 1864, in prescribing a mode of taxation different from that applied to other personal property, whereas the bank act requires the shares to be included in the list of the personalty of the owner delivered to the assessor for taxation, and that the shares are placed in the valuation at a greater rate than other moneyed capital, no deductions being allowed for debts due and owing by the shareholder.

The argument is, taking the objections together, as they should be so taken, having such an intimate connection, that the shares should have been included in that list, so that upon aggregating the personal property, shares included, the taxable portion would be shown by what remained after the deduction for debts was made, and that the policy of the law is that a man shall be taxed on what he is worth, at least so far as personal property was concerned.

These objections are satisfactorily answered by considering the proviso of the act of 1864, and the connection of our act of 1867, therewith.

That proviso is as follows:

" *Provided,* That nothing in this act shall be construed to prevent all the shares in any of the said associations held by any person or body corporate from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State

authority at the place where such bank is located, and not else-
where, but not at a greater rate than is assessed upon other
moneyed capital in the hands of individual citizens of such
State."

The sixth section of our act is as follows:

" Sec. 6. All assessments of the capital stock of banks orga-
nized under the laws of this State, or of the property of such
banks, made for State, county, or municipal purposes for the
year A. D. 1867, by virtue of the laws heretofore in force, are
hereby vacated and declared to be void and of no effect; and
it is hereby made the duty of the assessors of the several
counties and towns, cities or districts in this State in which
such banks so organized, or in which any banks or banking
associations organized under the laws of the United States, are
or may be located, to assess the shareholders in the same upon
the value of their shares, and to assess the real estate, if any,
in which any part of the capital stock of such banks or bank-
ing associations is invested, in the same manner and subject
to the same regulations, except as provided in this act, as is
provided by law for the assessment of other real and personal
property, in the same county or town, city or district, such
assessment to be made for the year 1867, with regard to the
ownership and value of such shares on the first day of July,
1867, and annually thereafter with regard to the ownership
and value of the same on the day which may be specified by
the laws in force concerning the assessment of other taxable
personal property in this State."

The object of this section is quite apparent, being plainly
expressed. Assessments before its passage had been made
for revenue purposes, upon the capital stock of these banks,
and the taxes were in process of collection. This act vacated
the assessments, and put a stop to the collection of that tax,

and to supply the deficiency in the revenue, which would be thereby occasioned, the assessors were required to assess the shareholders in the banks upon the value of their shares. The act of Congress did not intend to prescribe a mode by which alone the State could tax the shares. That was for State legislation, under the limitations and restrictions prescribed by the act. To get at the shares, it would be proper to require them to be included in the valuation of the personal property, not that they should, but might, occupy a different column in the list. It cannot be understood to mean, as appellant's counsel insist, that it should be included in such valuation, to enable the shareholder to deduct from their value such debts as he might owe, as required by the general revenue law. To us it appears that this part of the proviso was intended merely to indicate to the assessors in making up the assessment roll, to place the value of the shares in the column in which personal property is placed separately, so as to show its separate amount.

In this particular case, the shares could not be included in the valuation of the personal property, for that had been made long before the passage of this act, and the act was intended to supply an omission, as we have before said, and could not contain such a provision. The great object intended by the proviso, was that the shares should be assessed at the place where the bank was located, and that they should not be assessed at a greater rate than should be assessed upon other moneyed capital in the hands of individual citizens.

But is the appellant entitled to the deduction he claims? for if he is not, the first objection is quite immaterial, no matter where, on what portion of the list, those shares are found. If it had been the intention of the legislature to permit a deduction, they would have used language indicative thereof, by declaring that bank shares shall be taxed like other property. Having been denied the right to tax the capital stock of the banks, the legislature declares that the shareholders shall be

assessed and taxed on the value of their shares, by which mode as much revenue would be derived as from the former exploded mode.

The language and object of the act are plain. This is the first section:

" Hereafter no tax shall be assessed upon the capital of any bank or banking association, organized under the authority of this State, or organized under the authority of the United States and located within this State; but the stockholders in such banks and banking associations shall be assessed and taxed on the value of their shares of stock therein in the county, town, or district where such bank or banking association is located, and not elsewhere, whether such stockholders reside in such town, county or district, or not, but not at any greater rate than is or may be assessed upon other moneyed capital in the hands of individuals in this State. And in case any portion of the capital of such bank or banking association is invested in real estate, then there shall be deducted, in making the assessment of such shares, from the value of the same, such sum as shall bear the same proportion to the value of such shares, as the assessed value of all such real estate bears to the whole capital stock of such bank or banking association: *Provided*, That nothing herein contained shall be held or construed to exempt from taxation the real estate held or owned by any such bank or banking association, but the same shall be subject to State, county, municipal and other taxation, to the same extent and rate, and in the same manner, as other real estate is or may be taxed."

The old system of taxing banks on their capital stock being exploded, this new system was devised, by which an amount of revenue would accrue, equal to that derived from taxing the capital stock. The only deduction allowed by the act, from the value of the shares of each owner, is a proportionate

sum for the real estate in which a portion of the capital might be invested.

Appellant's case is not governed by the general law, but by this act, and we look in it in vain for any sanction to the claim for deductions on which he insists.   The intention of the legislature is further evident from the second section of the act, which is as follows :

" Sec. 2.  There shall be kept, at all times, in the office where the business of such bank or banking association, organized under the laws of this State, or of the United States, shall be transacted, a full and correct list of the names and residences of all the stockholders therein, and of the number of shares held by each, and such list shall be subject to the inspection of the officers authorized to assess taxes or to assess property for taxation, during the business hours of each day in which business may be legally transacted; and it shall be the duty of each county, town, city or district assessor, to ascertain and report to the county clerk of his county, or the other proper officer, as a part of his return of the assessment of property, a correct list of the names and residences of all stockholders in any such bank or banking association located in his county or town, with the number and value of all such shares held by each of them respectively, showing the name of each of such banks or banking associations in which such shares are held ; and such return shall also show what deduction, if any, is to be made from the value of such shares on account of the investment of any of the capital stock of such bank or banking association in real estate, as set forth in the first section of this act."

A deduction for real estate investment being specially named, excludes the idea of any other deduction.   It is quite apparent that owners of bank shares, under the system inaugurated by this act, were not intended to be placed on the

same footing with owners of other personal property. The object of the act was to supply the place of a system which had been overturned by a decision of the Supreme Court of the United States in Bradley's case, and to substitute for the capital stock the full shares into which that stock was divided, without any deduction save for investments in real estate, and which was taxable as other real estate, and thus obtain from the bank and the shareholders together as much as it did before from the tax on the capital.

That a new system was devised, is further discoverable from section four:

" Sec. 4. The collector of taxes, and the officer or officers authorized to receive taxes from the collector, may, all or either of them, have an action to collect the tax assessed on any share or shares of stock owned by non-residents of this State, from the avails of the sale of such share or shares ; and the tax assessed against such share or shares shall be and remain a lien thereon till the payment of said tax."

No such provision as this is found in the revenue law, nor is such an one as is contained in section five, found in it :

" Sec. 5. For the purpose of collecting such taxes, and in addition to any other laws not in conflict with the Constitution of the United States, relative to the imposition of taxes, it shall be the duty of every such bank or banking association, and the managing officers thereof, to retain so much of any dividend or dividends belonging to such stockholders as shall be necessary to pay any taxes assessed in pursuance of this act, until it shall be made to appear to such officers that such taxes have been paid ; and any officer of any such bank, who shall pay over or authorize the paying over of any such dividends, or any portion thereof, contrary to the provisions of

this section, shall thereby become personally liable for all such tax, and if the said tax shall not be paid, the collector of tax where the bank is located, shall sell said share or shares to pay the same, like other personal property."

In view of this legislation, it must be apparent, that a system of taxation for bank shares was designed, peculiar to itself, and independent of the general revenue system of the State. No deduction being allowed under this system, except for investments in real estate, the objection that the shares are valued at a greater rate than other moneyed capital of the State, falls to the ground. Value of property is one thing, and the rate at which it shall be taxed is entirely different. Rate is the proportion or per centage which property shall bear, no matter what its value. It does not vary as values vary, but is always the same. One per cent. or three per cent. on an ascertained valuation, applies to all property equally, however much the values may differ. The meaning of the act evidently is, that the rate or per centage of taxation on bank shares, shall be no greater than the rate imposed on other property. No violation of the act is shown in this regard.

This provision of the fifth section is attacked by appellant, on several grounds. We do not deem it necessary to defend it, as the remaining portions of the act would be effectual for the purposes intended, if that was stricken out, save the last clause, to which no objection has been made. Under that clause, should a collector be compelled to sell the shares for non-payment of the taxes, and the bank refuse to transfer them to the purchaser on the books of the bank, a court of chancery, on a bill filed for such purpose would compel the transfer. But on principle, we can perceive no valid objection to the section.

The State is entitled to its revenues. It has a right to use all the means, summary or otherwise, not prohibited by a

42—49th Ill.

higher power, to collect them.    In case of bank shares, if they are taxed and the taxes remain unpaid through the dividends as provided by this law, the State could by *mandamus* compel the officers of the bank to appropriate the dividends, or such portions as might be necessary to pay the taxes.

This question is fully discussed by the Court of Appeals of Maryland, in the case of *The State* v. *Mayhew*, 2 Gill 487, in most of the reasoning of which, and in the conclusion, we concur, and are in accordance with what we have said above.

Upon the last point made, that appellant had no notice of the assessment, it is sufficient to say, that it is not necessary he should have actual notice, the law requiring only that notice of the assessment should be published in a newspaper of the city, a certain length of time.    It is not denied such notice was given.

Perceiving no error in the record, the decree dismissing the bill must be affirmed.

*Decree affirmed.*