JACOB FAUST *vs.* THE TWENTY-THIRD GERMAN AMERICAN BUILDING ASSOCIATION OF BALTIMORE CITY.

*Taxation of Mortgages—Building Association Mortgages—Legislative Power of Taxation—Act of 1896, ch. 120.*

The provisions of the Act of 1896, chap. 120, secs. 146 A to 146 F, relating to the taxation of mortgage debts, do not apply to a Building Association mortgage, since the amount advanced under such a mortgage by the association to a member upon the value of his shares of stock, is not a debt secured by mortgage in the sense in which that word is used in the Act, and consequently the exemption from taxation of Building Association mortgages granted by Code, Art. 23, sec. 99, is not repealed by the Act of 1896.

The Legislature has the absolute power of taxation over all property in the State, except as restricted by the Constitution, and it has the power to provide all proper means for the collection of taxes.

The Legislature has the power to assess the property and levy the tax without the intervention of any officer, and this implies the power to determine the value of the property to be assessed.

The tax of eight per cent. upon the gross amount of the annual interest covenanted to be paid upon the mortgages, which is imposed by the Act of 1896, chap. 120, is valid.

Appeal from a *pro forma* decree of Circuit Court No. 2, of Baltimore City, sustaining a demurrer to the bill of complaint and dismissing the same. The bill alleges that the defendant corporation has, in conformity to its charter, loaned all of its capital, being the amount it has received as weekly dues from all of its members, and hath secured the repayment of the same by the execution of mortgages upon real and leasehold property situate in the State of Maryland, from such of its members as have become borrowers from said association. Said mortgages providing that such borrowing members shall continue to pay the weekly dues and premiums as provided by the by-laws of said association

until such time as there shall be sufficient money in its treasury, over and above all losses and liabilities, to pay unto the holder of each unredeemed share of its stock the sum of $208.00. That the defendant corporation by its directors and managers claim and assert that by virtue of the alleged authority of the provisions of chap. 120 of the Acts of the General Assembly of Maryland, passed at the January session, 1896, it, the said defendant corporation, is liable to pay, and that it intends to pay unto the State of Maryland, or unto its duly authorized collector of taxes, a tax of eight per centum upon the interest of all mortgage debts secured by mortgages after the passage of said Act, and that said directors claim and assert that the said tax on the income from its mortgages must be paid. And that said directors have avowed their intention to make the deduction of taxes upon the income from mortgages held by it, all of which taxes when so deducted shall be charged unto the plaintiff and all other holders of free shares similarly situated, and to them only, against the remonstrance of said plaintiff. That Dolfield, another member of said defendant corporation, and a holder of two shares of its stock, hath applied for a loan in redemption of said two shares at the par value of the sum of $416.00, and hath offered as security for the payment of dues and premium thereon a mortgage upon certain real estate in Baltimore City, in the judgment of said directors and managers, ample to secure the payment of dues and premiums on said two shares ; but that said managers and directors of said defendant corporation have avowed their intention, in making said loan, to exempt the mortgagor from the payment of the tax upon the income from said mortgage, in accordance with said Act of the General Assembly, and instead of said mortgage containing the provisions contained in all mortgages heretofore executed to said defendant corporation, and, as provided by Article 13 of its by-laws, insist upon and avow their intention in the execution of the mortgage from the said Dolfield to said defendant corporation

to so modify the provisions contained in all mortgages here-
tofore executed to it, that said mortgage shall conform in
all respects to the requirements of sections 146 A, 146 B,
146 C and 146 D of the said Act of the General Assembly.
That the plaintiff hath made demand upon the directors
and managers of said defendant corporation, and requested
them to refuse to insert in said mortgage from the said
Dolfield the provisions they are about to insert therein;
and hath requested them to insert therein the provisions
heretofore inserted in all mortgages held by said defendant
corporation, but the said directors and managers of said de-
fendant corporation refused, and still refuse, to comply with
said request, and insist upon the compliance with the pro-
visions of the said sections 146 A, 146 B, 146 C and 146 D of
said Act of the General Assembly of Maryland.    That the
tax provided by said Act of the General Assembly of
Maryland upon the income from mortgages is in violation
of the provisions of the 15th Article of the Bill of Rights,
and is unconstitutional, null and void under the provisions
of the Constitution of Maryland, and is in violation of the
provisions of Article 23 of the Code of Public General
Laws of the State of Maryland, relating to homestead or
building associations, and prays that the defendant corpora-
tion may be restrained and perpetually enjoined from vol-
untarily complying with the provisions of said Act of As-
sembly in reference to said tax on the income from mort-
gages and for general relief.

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, PAGE and ROBERTS, JJ.

*Bernard Carter* and *Ralph Robinson* (with whom were
*Richard Bernard* and *Alfred D. Bernard* on the brief), for
the appellant.

*Joseph W. Hazell* (with whom was *George R. Willis* on
the brief), for the appellee.

*Harry M. Clabaugh, Attorney-General,* for the State of
Maryland.

BRYAN, J., delivered the opinion of the Court.

The questions in this case concern the taxation of mortgages. The appellant draws in question the meaning and validity of certain sections of chapter 120 of the Acts of 1896. He maintains that the sections from 146 A to 146 F, both inclusive, do not apply to building or homestead associations; and that they are unconstitutional, null and void. Without, at present, giving our attention to the proceedings by which these questions are presented, we will examine the sections which have been mentioned. One hundred and forty-six A, enacts that " All mortgagees or assignees holding mortgages of record in this State shall annually pay a tax of eight per centum upon the gross amount of interest covenanted to be paid each year to said mortgagee or his assigns by the mortgagor, to be collected by the proper authorities as other taxes for county and State purposes in the several counties, and municipal and State taxes are collected in Baltimore City." One hundred and forty-six C enacts that after the passage of the Act all covenants shall be void which provide that the mortgagor shall pay any or all taxes, assessments, public dues or charges levied or to be levied by law on the mortgage debt created or secured by such mortgage, or on the interest covenanted to be paid. One hundred and forty-six D, enacts that when after the passage of the Act any person or corporation shall lend money on mortgage on property in this State, their agent or attorney shall take an oath to be endorsed on the mortgage that the mortgagee has not required and will not require the mortgagor to pay the tax levied on the interest covenanted to be paid. And one hundred and forty-six F, enacts that whenever any mortgagor pays the tax required to be paid by the mortgagee, he shall be entitled to have the amount so paid deducted with interest from the mortgage debt. The language of the last three sections is significant of the purpose of the Legislature; it speaks of "*mortgage debt*," and of " *lending money on mortgage.*" The terms used are appropriately applicable to the conditions ex-

isting between debtor and creditor; to a transaction wherein money is received by one party and a contract is made by him to repay it to the other party. Now, in a building association mortgage the contract is not of this nature. These mortgages were first authorized in this State by the Act of 1852, chapter 148, which is substantially embodied in the Code, Article 23, from sections 95 to 102 inclusive. The building association is authorized to advance to any of its members the sum which he would be entitled to receive upon the dissolution of the corporation for any number of shares which he holds, and to take from the member who receives the advance a mortgage on real or leasehold property to secure the payment of the weekly dues on the shares and all fines and penalties which may be incurred, and also interest on the sum advanced. The payments of dues and interest are to continue until the shares are worth the sum of money advanced upon them. The association is reimbursed for its outlay by its ownership of the stock, which in the natural course of its business, if successful, will gradually enhance in value until it equals the sum advanced upon it. But the mortgagor never covenants for a payment of the sum of money advanced. He and the other stockholders are engaged in a joint enterprise which, according to reasonable expectation, will raise the value of the stock to an amount which is fixed and settled when the association is formed. Some members wait until this consummation is reached, and then receive the money for their shares; but the borrowing member receives his money at the time of the loan, and pays interest on it until the end is attained. The difference is very marked between a transaction of this kind, and the ordinary contract between debtor and creditor. In *Robertson* v. *American Homestead Association*, 10 Maryland, 397, this Court considered the nature of building association mortgages; and it decided expressly and distinctly that the sum advanced to the mortgagor by the association could not be regarded as a debt. Robertson had executed a mortgage in which it was recited that a

loan of four hundred and sixty dollars had been made to him by the building association, and he covenanted to pay interest on this sum, and to pay his fines and weekly dues ; but there was no covenant to repay the sum of four hundred and sixty dollars.   The Court said : " It is obvious that the sum actually due, according to the covenants in the mortgage, cannot be ascertained by estimating the sum $460, named in the mortgage, as if it were a debt secured, or money to be repaid, there being no covenant in the mortgage, or any obligation on the mortgagor, requiring him to repay that sum, or any part of it, as such."   In a subsequent part of the opinion it is said, " the sum of $460 was paid to the mortgagor by the society, as the ascertained value in advance of his shares of stock in the corporation.   And although, in the preliminary part of the mortgage, it is recited to be "a condition precedent to the money below named being loaned to him that these presents should be executed," yet the consideration is stated to be $460, " in hand paid by the corporation to the mortgagor," while the mortgage contains no covenant or obligation whatever for the repayment of said sum or any part of it.   This Court cannot regard the principal sum named in the mortgage as in any sense a loan." *Robertson's case* has always been regarded in this State as settling the true character and nature of these mortgages. In *Rice's case*, 50 Maryland, 312, it was held that these words in the Assessment Act of 1876, " mortgages upon property in this State and the mortgage *debts* respectively *secured* thereon " did not apply to building association mortgages. We therefore think that the sections of the Act of 1896, chapter 120, which we have been considering, were not intended to include building association mortgages.   The Legislature did not intend to take away the exemption granted to them by Article 23, section 99, of the Code, amended by the Act of 1894, chap. 321.

The power of the Legislature to tax mortgages and mortgage debts has been frequently exercised, and it has been recognized by the decisions of this Court.   If any doubts

have heretofore existed, they are set at rest by section 51 of Article 3, of the Constitution, as amended by the Act of 1890, chapter 426.    The amendment is in these words, " but the General Assembly may by law provide for the taxation of mortgages upon property in this State and the debts secured thereby in the county or city where such property is situated."    The tax is fixed by section 146 A, at eight per cent. on the gross amount of interest covenanted to be paid to the mortgagee, and one-fourth of this amount is to be paid to the State ; and the remainder to the counties or the city of Baltimore, according to the location of the mortgaged property.    It will be noticed that the Legislature made the levy of the tax and the assessment of the taxed property by its own act without the intervention of any officer.    Except as restricted by the Bill of Rights and the Constitution it has the absolute power of taxation over all the property within the State.    It has also the power to provide all the means and appliances necessary and proper for the collection of taxes.    For manifest reasons of convenience it usually exercises these powers through agencies and instrumentalities created by itself.    But no possible reason can be alleged why it cannot exercise its powers directly without resorting to intermediary functionaries.    The Constitution does not forbid it, and no other department of the government can interfere to prevent it.    In *State* v. *Mayhew,* 2 Gill, 487, it was regarded as unquestionably within the competency of the Legislature as settled by reason of long usage.    And in *State* v. *Sterling,* 20 Maryland, at pages 516 and 517, it was said : " The duty of ascertaining taxable values and of assessing and collecting the taxes thereon, necessarily rests in the discretion of the Legislature and it may perform that duty by its own legislative acts, or through the agency of such officers or tribunals as it may appoint for that purpose.    *State* v. *Mayhew,* 2 Gill, 487.    The legislative power to assess and compel the payment of State taxes to be made directly to the State Treasurer, without other official assistance, implies power

to determine the value of the property to be assessed, and consequently a power of discrimination in selecting and fixing the taxable values. These powers have been so long exercised without objection, that they cannot be brought in question now, without contravening, in that respect, the settled policy of the State. *Tax cases*, 12 G. & J., 117; *State* v. *Mayhew*, 2 Gill, 487." The tax levied cannot be considered as excessive or unjust. Eight per cent. on the interest even if it should be six per centum would be forty-eight cents on the one hundred dollars of principal, one-fourth of this amount for the State and three-fourths for the counties or the city of Baltimore as the case might be; the State's portion being twelve cents, and the portion allotted to the counties or the city of Baltimore being thirty-six cents. The existing State tax by Article 81, section 22 of the Code, is seventeen cents and three-quarters of a cent on the hundred dollars. While the County Commissioners are authorized by Article 25, section 7, to levy all needful taxes on the assessable property within the county liable to taxation, and it is well known that the tax rate is, or may be, always much greater than thirty-six cents on the hundred dollars. Of course, in some instances, the mortgage debt might not be worth a hundred cents on the dollar. And therefore it was wise and provident on the part of the Legislature to make an adjustment of the tax in such manner as not to impose on any holder of a mortgage debt a greater burden than his fair proportionate contribution to the support of the government. The adjustment shows on its face a studious effort to discharge a public duty in a spirit of justice and moderation. The assessment and levy were made in the legitimate exercise of the powers of the Legislature in relation to subjects confided to its discretion; and it is our duty to declare them valid.

We have given our views on the foregoing subjects, because we were requested by the counsel to do so, and because we thought that we would thus contribute greatly to the public interest and convenience. We know that the

mode of proceeding in this case has the sanction of high authority ; but we do not wish to be understood as deciding that it is to be regarded as a precedent in future cases. To state the case briefly :   A member of a building association files a bill in equity against the corporation to enjoin it from complying with the provisions of the Act of 1896, chapter 120, which relate to the taxation of mortgages, alleging that they are unconstitutional and void.   The Act, by sections 184, 185 and 186, provides the manner in which a person who may think that his property has been improperly assessed for taxation may bring his case before the Courts for decision.   Section 186 gives him a right of appeal to this Court.   The statute thus affords ample means of protection to those who may consider themselves injured by proceedings under it.   A fair hearing is prescribed ; and the State and the party assessed are both represented.  And in proceedings which have heretofore been instituted to enjoin the collection of taxes which have been assessed and levied, the injunction has been prayed against the officer attempting to make the sale ; in this way the public interest is represented in litigation.   To be sure in this case the Attorney-General argued the questions at the bar in behalf of the State ; but the State's interests could not be effectually protected, unless it was represented by some public officer as a party to the cause, who would have the right to make defences in the pleadings, and to support them by offering testimony.   This has been the usual course of proceeding.   As we concluded to give our opinion on the questions argued in this case we do not consider it necessary to say more.   There is no necessity at this time to argue this point, and we do not intend to give a judicial decision upon it.   We have made these remarks in order to let it be known that we hold ourselves untrammelled if the question should come before us again.

*Decree reversed and cause remanded.*

(Decided June 18th, 1896, *per curiam.*   The foregoing opinion was filed November 19th, 1896.)

Fowler and Page, JJ., concur in the opinion in so far as it holds that building association mortgages are not subject to taxation under the Act of 1896, but they do not deem it necessary at this time to pass upon the constitutionality of those sections of the general assessment law imposing taxes on the income of mortgages.