## THE MONTICELLO DISTILLING COMPANY *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Taxation of Distilled Spirits in Possession of Warehouseman—Assessment by Tax Commissioner—Notice of the Assessment is requisite—Constitutional Law—Due Process—Taxation of Property in this State Owned by Non-resident—Double Taxation—Taxes Voluntarily Paid Under Invalid Statute—Appeal.*

A non-resident who owns personal property situated in this State is liable to taxation thereon according to its value.

Notice and an opportunity to be heard are essential to the validity of every assessment for taxation, but personal notice is not necessary.

A statute which authorizes an officer to value a certain class of property for taxation without giving any notice to the owner of such valuation or affording him an opportunity to be heard, and when there is no provision in the statute or by general law for an appeal from such assessment, is unconstitutional.

A warehouseman in possession of distilled spirits, for which he has issued negotiable certificates, may lawfully be required to pay the

taxes thereon, there being reserved to him a lien on the property for such payments.

The Act of 1892, ch. 704, requires every distillerand every warehouseman having the custody of distilled spirits to make a report of the spirits on hand on January 1st, in each year to the State Tax Commissioner. The Tax Commissioner is directed upon receiving such report to fix the valuation of the spirits for taxation and send the same to the various county commissioners and the Appeal Tax Court of Baltimore City, who are directed to levy the State, county and city taxes upon such assessment. If the spirits are not owned by the distiller or warehouseman in whose possession they are, he must nevertheless pay the taxes and has a lien on the spirits for such payment. The Act makes no provision for giving notice to the warehouseman or owner as to the valuation of the property or for a hearing, and no appeal is given from the valuation fixed by the Tax Commissioner, but it is declared that the State and municipal taxes should be levied upon the valuation so made. No other statute applicable to the case gives a right to a hearing upon the question of valuation or an appeal from the State Tax Commissioner. *Held*, that the Act is unconstitutional, because the failure to provide for a hearing of some kind as to the valuation of the property for taxation operates to deprive the owner of his property without due process of law, and that the taxes levied under it cannot be recovered by action.

By the Act of 1892, ch. 704, the distiller or warehouseman in possession of distilled spirits is required to pay a tax on all such spirits on hand on January 1st, in each year. Sec. 4 of the Act requires warehousemen to make quarterly reports to the Tax Commissioner showing all deliveries of spirits from his custody and to pay the taxes on the spirits so delivered. Sec. 2 provides that the same distilled spirits shall not be taxed twice in the same year. *Held*, that Sec. 4 relates only to spirits placed in the warehouse after January 1st, and that the Act does not impose double taxation.

A party cannot sue to recover back taxes which he voluntarily paid, but which could not have been collected by legal process because the statute under which they were levied was defective in not providing for notice of the assessment, because in such case the tax payer has waived his right to be heard.

A judgment rendered in favor of the plaintiff under an unconstitutional statute will be reversed although there was no error in the rulings of the trial Court to which exceptions were taken.

Appeal from the Baltimore City Court, (DENNIS, J.) There was a judgment for plaintiff for $7,411.61. At the trial the only exception was taken to the rejection of the two following prayers, offered by the defendant.

1. The defendant prays the Court to rule that the plaintiff has offered no evidence legally sufficient to entitle the plaintiff to recover, because there is no evidence that the defendant was the owner of the spirits at the times when the assessments were made, and because there is no evidence that the tax bills were due at the time this action was instituted, and because there is no evidence from which an obligation to pay the taxes to the two joint plaintiffs can be inferred, as a contract with them, and because there is no evidence to show that the State Tax Commissioner had authority to assess the spirits against the defendant. (*Refused.*)

2. The defendant prays the Court to instruct the jury that if it shall, in lieu of a jury, find the facts stated in defendant's preceding prayer, and that on the first day of January in the year 1894, it was the owner of only 895 barrels of the distilled spirits in its bonded warehouse, and on the first day of January, 1895, 3,100½ barrels of such distilled spirits, and that the residue were on storage for other persons, then there can be no recovery against the defendant, except with respect to the taxes, penalty, expenses and interest in relation to the said distilled spirits owned by the defendant. (*Refused.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*William A. Fisher* and *D. K. Este Fisher* (with whom was *Wm. Cabell Bruce* on the brief), for the appellant.

The Legislature did not intend by the *Act of 1892*, chapter 704 (Supplement to the Code, article 81, section 204, &c.), to impose upon the distiller the liability for the tax thereby created, and did not intend to make it payable at all until after the distilled spirits had been delivered out. The section 2 provided that "the tax *shall be levied and paid*" upon the amount of distilled spirits on hand in the bonded warehouse on the first day of January.    The Act,

however, is not a legislative levy, and merely contains the
directions for the manner and circumstances under which
levies were from time to time to be made by the appropri-
ate officers.    Sections 1 and 2, therefore, merely instructs
the officers upon what basis the taxes for that year are to be
collected, but do not determine when or by whom the taxes
are to be paid.    It does, however, determine that the
quantity on hand on January 1 shall "represent the taxable
distilled spirits for such year."

Section 4 only provides the time when the tax is payable
and the manner in which it shall be collected.    It is pay-
able on the spirits which have been removed from the ware-
house, and at the end of the quarter after their removal.
There is no other provision in the Act which fixes the
method of payment.    Section 5 confirms this construction,
because it provides that if the distiller shall fail to make the
reports at the end of the quarters, showing the deliveries
during the quarters, "the entire amount of the taxes as-
sessed for the current year," "shall become and be imme-
diately due," and the making of them thus become due is in
the nature of a penalty.    The reference is to the entire
amount assessed under sections 2 and 3, and there is a
clear legislative declaration that they were not due before,
and that the respective due-dates are fixed by the preced-
ing section.    Section 8 provides that any warehouseman,
custodian or agent paying the tax on distilled spirits, shall
have a lien upon the distilled spirits covered by such tax.
This section also confirms our construction of the legisla-
tive intention.    It is not to be understood that the Legis-
lature intended to give to the distiller or warehouseman a
barren remedy, but that a substantial, immediate and effec-
tive lien was in their contemplation.    There is no way in
which this intention could be gratified, except to hold that
the warehouseman could only be required, if it could be
required at all, to make the payment of the tax after the
United States tax has been paid and the custody of the
agent of the United States has been terminated.

Section 3274 of the Revised Statutes of the United States places the bonded warehouse in the joint custody of the United States Storekeeper and the proprietor, and no spirits can be delivered out except upon the order or permit of the storekeeper and upon the written assent of the collector. Nor can the spirits pass out of the custody of the United States officer until after the United States tax on them has been paid. It is therefore obvious that the State could give no lien until the authority of the United States over the article had been exhausted, and its authority terminates only at the time mentioned in section 4.

The alternative theory is that of the plaintiff, that the intention was that when the quantity of spirits on hand on the first day of January of any year was ascertained, the levy was to be made against the distiller, without respect to ownership of the spirits, and that it becomes the debtor for the whole tax. Independently of the unreasonableness of the proposition, upon the grounds heretofore stated, there is the difficulty that such a construction would certainly involve the Legislature in an attempt to overstep the constitutional limit of its power, even if it can be contended that the power exists, under our construction, which we deny. It is not in the power of the Legislature to make one person a *debtor* for the taxes of another, even if it has the power to compel one person to act as the collector of the State from another of the taxes payable by the latter. The 15th Article of the Bill of Rights and the 14th Amendment to United States Constitution would be insuperable barriers. It must be remembered also that under our Maryland system of taxation, it is not the *property* which is taxed at all. The Bill of Rights (Art. 15) requires that *each individual* shall be taxed according to his worth in real or personal property. See *The United States Electric Power and Light Co.* v. *The State*, 79 Md. 70.

The power of the State was pushed to the utmost limit when it was determined that an individual or corporation could be compelled against his will to act as the collector

of its taxes in cases in which such relations existed as that
of a stockholder to the corporation.    But it cannot be that
corporations, whether chartered under the laws of this or
other States, can be required to pay, on behalf of customers
for whom property is held on storage, their taxes on
the property, when it would be necessary to advance the
money for the purpose, without the power to procure re-
payments of it for long periods, in this case a period of
eight years.

If the Act can be treated as within the constitutional
power of the Legislature, it can only be so regarded, if the
construction contended for by us is maintained, that it was
never intended that the warehouseman or distiller should be
required to pay the tax until he had in his control the means
for his immediate reimbursement.

But it is submitted that even under this more reasonable
construction of the legislative intent, the Act is not within
the legislative authority.    It would be the taking of the
property of the appellant without due process of law, to
compel it to pay the taxes on property of which it was
merely the custodian, when it could only receive the money
back at some future time, more or less remote, by the
enforcement of a lien upon it.

The Act denies to distillers and custodians of distilled
spirits the equal protection of the law, and is contrary to
the Fourteenth Amendment of the Constitution of the
United States.    This class of persons is singled out and
compelled to advance money for the payment of the taxes
of other persons, while no similar obligation is imposed
upon any other class.

There is also another difficulty in the path of the theory
of the State that the payment of the tax can be required
from the custodian.    If the lien could be regarded as other-
wise effectual, in spite of the outstanding warehouse receipt,
it could not be made available without the discharge of the
spirits from the custody, control and lien of the United
States Government, and in order to do so, the government

officers would require first, that the revenue tax should be paid, and secondly, that it should be paid by the proper person.    It would only be accepted, therefore from the holder of the warehouse receipt.    But, if the government should be willing to accept it from the distiller, the distiller is in the  position of being compelled to advance not only the money to pay the State tax, but also the amount of the government tax.    There is no provision in the statutes of the United States which authorize payment of the revenue taxes to be made in this manner, and which gives any lien for the tax revenue in favor of the distiller thus making the payment.    It would be an instance of a payment of the indebtedness of one person made by another person without his authority.    There would not only be no lien for the amount thus expended, but there would be no right of action for its recovery.    And there would certainly be no authority in the State to make any one an agent to collect the United States taxes, or to compel it to pay them. Besides, the appellant is a corporation chartered by New Jersey, and even if the State of Maryland can require its citizens to perform services, because they are its citizens, and because they are for this reason subject to its authority, the ground for it fails with the citizenship.

The Act contains no provisions for any notice to the owner, distiller, custodian or any other person of the time or place for the valuation of the spirits, nor does it provide any opportunity for any one interested in the spirits to be taxed to be heard in reference to their valuation or any other matter.    Nor is there any provision of the kind in the Code or any other statute.    The absence of such protection to the parties interested is fatal to the validity of the Act.

The Fourteenth Amendment to the Constitution of the United States prohibits any State to pass any law, the effect of which is to take private property without due process of law, and it has been repeatedly held that taxation without notice and an opportunity to be heard is the taking of property without due process of law.    *Ulman* v. *The Mayor and*

*City Council, etc.,* 72 Md. 592 ; *Railroad Tax Cases,* 13 Federal Rep. 722 ; *County of Santa Clara* v. *Southern Pacific R. R. Co.,* 18 Fed. Rep. 385 ; *Spencer* v. *Merchant,* 125 U. S. 355-6 ; *Palmer* v. *McMahon,* 133 U. S. 669 ; *Walston* v. *Nevin,* 128 U. S. 581 ; *Lent* v. *Tillotson,* 140 U. S. 337-8 ; *Albany City Nat. Bank* v. *Maher,* 20 Blatchford, 341.

*John V..L. Findlay, City Counsellor* (with whom was *Leon E. Greenbaum, City Attorney,* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

By the *Act of 1892,* ch. 704, the General Assembly directed all distilled spirits in this State to be valued and assessed for purposes of State and county taxation. The method prescribed for ascertaining and fixing that valuation differs from the ordinary mode pursued in relation to other tangible personal property. The Act requires every distiller and every owner or proprietor of a bonded or other warehouse in which distilled spirits are stored, and every person or corporation having custody of such spirits, to make report to the State Tax Commissioner on the first day of January in each and every year, of all the distilled spirits on hand at such date. The Tax Commissioner upon receiving such report is authorized to fix the value of the spirits for the purpose of taxation ; and it is made his duty to transmit, without delay, a copy of that valuation to the Appeal Tax Court of Baltimore City, if the distillery be located in the city, or to the County Commissioners of the County in which the distillery may be situated ; and " upon the valuation and return so made," the Mayor and City Council of Baltimore, and the County Commissioners respectively " are " directed and required in making their annual levies " to impose the State and the city or the county tax. If the spirits are owned by other persons than the distiller or the warehouseman he is still required to pay the tax thereon ; but by the eighth section of the Act he

is given a lien on the spirits covered by the tax which he may pay for the person to whom the spirits belong. It is provided by sec. 4 that the distiller and warehouseman shall make quarterly reports to the Tax Commissioner showing all deliveries of distilled spirits from his custody and care, and he is required to pay to the proper officer the State and city or county tax on the spirits so delivered, though by the proviso to sec. 2 it is declared "that the same distilled spirits shall not be taxed twice for the same year."

The appellant is a New Jersey corporation whose distillery is located in Baltimore. Upon the returns made by it, the State Tax Commissioner valued the distilled spirits in its possession at eight dollars per barrel, and upon that valuation the taxes, for the recovery of which this suit was brought, were levied against the company. Of the large number of barrels of spirits included in the returns, comparatively few belonged to the company; by far the larger portion were owned by persons who were unknown to the company. The evidence of these persons' ownership were certificates issued by the company. These warehouse certificates pass by delivery and after they leave the possession of the warehouseman or the distiller he can with difficulty, if he can at all, keep trace of them.

The taxes levied by the Mayor and City Council of Baltimore on the valuation made by the State Tax Commissioner were not paid by the appellant. This suit was then instituted to recover them, and the distillery company resisted payment upon several grounds. The case was tried before the Judge of the City Court without the aid of a jury, and resulted in a judgment against the company for the amount of the taxes claimed by the city. From that judgment this appeal was taken.

It is insisted on the part of the appellant that the whole scheme of the *Act of 1892* is vicious. The Act is assailed because it lays a tax upon property and not upon the owner of the property; because, further, it compels a person and a corporation not owning the spirits to pay the tax

due by the unknown owner of them ; and finally, because, in failing to make provision for the distiller or warehouse-man to be heard either before a valuation is fixed upon the spirits by the Tax Commissioner, or after such valuation but before the imposition and collection of the tax, the Act deprives the party charged with the tax of that due process of law without which, in some form, no valid judgment can be rendered by any tribunal at all.

Whilst there is a great deal of loose and inexact phraseology employed in many of the tax laws, it is not to be construed critically with a view to defeat the enactments, but it must be interpreted liberally so as to uphold them. This *Act of 1892* was not very artificially drawn, but its meaning and purpose are sufficiently manifest. Its title declares that it is an Act to provide for a tax on distilled spirits. Taxes of the kind here dealt with are, under Art. 15 of our Declaration of Rights, levied not on *things* but on the *owners* of things ; and the value of the things owned fixes the measure of the owner's liability to contribute in taxes towards the support of the government. This is an axiom of political economy no less than a fundamental provision of our organic law. *Appeal Tax Court* v. *Patterson*, 50 Md. 366 ; *U. S. Elec. Power & Light Co.* v. *State*, 79 Md. 63. It cannot, therefore, be assumed that the Legislature deliberately intended to disregard this principle and to place the tax on the spirits and not on the owners of them. " Every person in the State," says the 15th Art. of the Declaration of Rights, " or person holding property therein, ought to contribute his proportion of public taxes for the support of the government, according to his actual worth in real and personal property." It is the individual, then, who is *in* the State, or who holds *property* therein, that is liable to taxation. He may be out of the State—he may be a non-resident—but if he has property situated here, he is as much bound to contribute to the support of the government, according to the value of that property, as though he were permanently domiciled within the limits of

the Commonwealth.   Whatever the language of the statute may be, it must bend to this paramount law ;  and it must be read as in harmony with it.   The purpose of the Act obviously was to raise a revenue from the owners of a class of property which up to the time of the adoption of the statute now before us had not been reckoned in the assessments upon its owners ;  and the peculiar nature of the property itself, the known difficulty in tracing its ownership and the ease and facility with which the title to it was transferable, were all vital elements to be considered in devising a scheme for subjecting the persons who owned, had possession of or controlled these distilled spirits, to the obligation of contributing their just share of the public burden.   Though the language employed, like that used in many of the other assessment laws, if read literally would indicate an intention to impose the tax on the property and not on the owner of it, that is not its meaning when considered in connection with the settled policy of Maryland as announced in the Declaration of Rights.   We hold, then, that the tax is upon the owner of the spirits and not specifically on the spirits.

As the distiller or the warehouseman is the individual through and from whom the title passes to others by means of certificates which he, and he alone, issues, it is no hardship to require him to pay the tax upon all spirits in his possession, reserving to him a lien for his advances ; nor is it an unreasonable or an unlawful legislative requirement. It is no hardship because it is always in the distiller's or the warehouseman's power to immediately reimburse himself the taxes advanced for the unknown owner, and he may do this by selling enough of that owner's spirits for the purpose—the statute give him that right and the purchaser of the warehouse certificate is chargeable with knowledge of what the statute provides.   The distiller or the warehouseman may enforce his lien as soon as he pays the tax due by the owner, and he is under no obligation or necessity to delay longer than his own wishes or convenience may sug-

gest or dictate.   The requirement that the distiller shall pay
the tax for the owner is neither unreasonable nor unlawful,
because it simply makes him the agent of the State to col-
lect for the State, precisely as a corporation is made an
agent to collect from its stockholders the tax due by them
on the stock which they hold.   The legislation of 1892
with respect to distilled spirits is, in this particular, identical
with the provisions of the Code relating to the tax on shares
of stock, and these latter have been upheld by this Court
as valid enactments.   *Casualty Ins. Co. case*, 82 Md. 564;
*Am. Coal Co.* v. *Co. Coms.*, 59 Md. 197.

Nor is there a double tax imposed by the Act.   It was
contended that a double tax was imposed, because by sec.
2 the distiller is required to pay a tax measured by the
value of all spirits in store on January the first, and he is
also obliged by secs. 4 and 5 to pay quarterly a tax upon
the value of all spirits removed from the warehouse during
the preceding three months.   But as it might readily occur
that spirits would be placed in bond *after* the report of Jan-
uary had been made, and would be removed *before* the fol-
lowing January, they would, if this did happen, escape
valuation and the owner of them would escape taxation.
To prevent this the provisions of secs. 4 and 5 were drafted,
and when those sections are read in connection with the
proviso of sec. 2, which prohibits a collection of the tax
twice in the same year, it becomes quite apparent that secs.
4 and 5 have relation only to spirits placed in bond after
the date of the January report, and which, therefore, are
not included in that report.

We now come to the remaining question, which does not
seem to have been presented to the Court below, as the
learned and careful Judge who decided the case makes no
allusion to that question in his admirable and lucid opinion.
The question is this :   Does the Act of 1892 deprive the
owner of distilled spirits of due process of law by reason of
its failure to provide him a hearing of some sort as to the
valuation of his property for the purposes of taxation ?

Personal notice is not necessary.    It is sufficient if notice be given by a law designating the time and place where parties may contest the justice of the valuation.    But notice and an opportunity to be heard are essential to the validity of every assessment.    "The Legislature can no more arbitraily impose an assessment for which property may be taken and sold than it can render a judgment against a person without a hearing.    It is a rule founded on the first principles of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty or property without an opportunity to be heard in defence of his rights ; and the constitutional provision that no person shall be deprived of these without due process of law has its foundation in this rule."    *Stuart* v. *Palmer*, 74 N. Y. 183 ; *Ulman* v. *M. & C. C.,* 72 Md. 593.    This fundamental and inflexible principle underlies not only all judicial but all executive and administrative proceedings which may deprive a citizen of life, liberty or property ; and consequently it is applicable, in its full force, to the method by which each individual's property is valued to fix the basis of his liability for the payment of taxes.    *Co. Com.* v. *Union Mining Co.*, 61 Md. 545 ; *Co. Com.* v. *Winand*, 77 Md. 522 ; *Meyers & Houseman* v. *Co. Com.*, 83 Md. 385; *Pittsbg. & Ry. Co.* v. *Backus*, 154 U. S. 421; *Merch. & Manuf. Nat. Bk.* v. *Penna.*, 167 U. S. 461 and cases therein cited.    This doctrine was not questioned by the learned counsel for the city; but he insisted that there were other provisions of law which could be invoked to rescue the Act of 1892 from condemnation on the ground we are now considering.    Let us see whether this is so.

Confessedly the Act of 1892 itself contains no provision by or under which the distiller, the warehouseman or the owner may be heard by the State Tax Commissioner on the question as to what value shall be placed on the distilled spirits in bond.    It does not authorize the Tax Commissioner to accord a hearing at all, and in this particular vitally differs from the Pennsylvania Statute under review in *M. & M. Nat. Bk.* v. *Penna., supra*.    The presentation to

the Tax Commissioner " by the corporation of a statement of its property and of its value, which it is required to furnish, is not the equivalent of a notice of the assessment made and an opportunity to be heard thereon." *Railroad Tax cases,* 13 Fed. Rep. 750. Nor does the Act of 1892 give an appeal to any other tribunal from the valuation fixed by the Tax Commissioner. His *ex parte* decision is final. Secs. 10 and 14, Art. 81, Code Public General Laws, and secs. 1, 5 and 20, Art. 50, Baltimore City Code of Ordinances are relied on to supply what the Act of 1892 omits in this respect. The above cited sections of the Baltimore City Code of Ordinances merely prescribe the duties of the Appeal Tax Court, and do not, as they could not (being merely ordinances of the municipality), qualify the explicit language of the Act of 1892. The explicit language which they cannot qualify is, that all distilled spirits " shall be subject to municipal and county taxation " " *upon the valuation and return so made*" by the State Tax Commissioner and that both the County Commissioners of the counties and the Mayor and City Council of Baltimore "are directed and *required*" to impose the tax " upon the spirits *so* returned and *valued* by the State Tax Commissioner." Thus the valuation fixed by *him* is declared by the Legislature to be the valuation upon which both the city and State taxes are to be levied. Obviously no mere ordinances of the city could modify or alter such a legislative direction and requirement, or give to the Appeal Tax Court authority to change the valuation made by the State Tax Commissioner. If the Appeal Tax Court cannot in the teeth of the Act of Assembly make, under the ordinances, a change in the valuation fixed by the State Tax Commissioner, a hearing before the Appeal Tax Court would be a hearing after judgment, without power in the tribunal granting the hearing to give relief against the judgment rendered without a hearing. So the ordinances must be laid aside, because no matter what their provisions may be, they cannot control the plain language of the statute.

But do the sections of the Code apply? Sec. 10, Art. 81 relates to the county commissioners and the Appeal Tax Court; sec. 14 to the Appeal Tax Court only. Sec. 10 professedly deals alone with cases " where discoveries of assessable property are made by collectors, county commissioners or the Appeal Tax Court," from designated sources, and those sources are the returns of clerks, register of wills or assessors, " or in any other way." In these instances, that is when discoveries of assessable property are made by collectors, county commissioners, the Appeal Tax Court or in any other way, it becomes the duty of the county commissioners and the Appeal Tax Court to *assess* such discovered property. The meaning of this section obviously is that these tribunals shall have power to *assess* property that has not been assessed and that ought to be assessed ; but as distilled spirits are required to be assessed by the Tax Commissioner and are, in fact, assessed by him before any return is made to the Appeal Tax Court, they cannot be classed as discovered unassessed property, or as property which the Appeal Tax Court is given power to assess. The power to assess unassessed property is not a power to review and revise the valuation placed by some one else on that same property. The statute confers on the State Tax Commissioner an exclusive authority to value and assess this special class of property. A general power given to the Appeal Tax Court to assess unassessed property can by no fair construction include the right to readjust a valuation made by another officer when the valuation made by him is declared. by law to be the one upon which the tax must be levied. Section 14, Art. 81 of the Code, requires the Appeal Tax Court to meet from time to time for the purpose of hearing appeals, making transfers, &c. But it is self-evident the Appeal Tax Court can only hear such appeals as the law provides shall be heard by it. If no appeal to it be given in a particular case, no appeal lies. It is a statutory tribunal with limited and defined powers, and of course it can only hear such appeals as the law permits to be taken to it

Sec. 145, Art. 81 of the Code, requires the Appeal Tax Court and the county commissioners to give notice to the owner before they proceed to increase the valuation upon his previously assessed property, and before they undertake to add any new property not valued and returned by the proper assessor or collector. This section has relation only to property which the Appeal Tax Court or the county commissioners have the right to assess, and does not apply, as the proviso at the end of it shows, to property " assessed and returned  *  *  *  *  *  by the proper collector or assessor whose duty it is to assess and return the same." Nor does sec. 192*a*, ch. 275, laws of 1898, which declares that there shall always be an appeal to the Board of County Commissioners from the acts of all assessors or agents appointed by them, " or others authorized to act as assessors under the laws of this State," apply, because whatever its scope, it in explicit terms is confined to the county commissioners, and has no relation to the Appeal Tax Court of Baltimore City.   There is, as this outline of the statutes indicates, no provision of law fixing a definite time for the State Tax Commissioner to make his valuation under the *Act of 1892*, or designating a time for him to hear complaints, as in *Hagar* v. *Reclamation Dis.*, 111 U. S. 710 ; nor is there any enactment giving the individual assessed an appeal from that assessment to some other tribunal.

Under sec. 144, Art. 81 of the Code, which makes provision for the valuation by the State Tax Commissioner of the shares of the capital stock of banks and other corporations, it is the duty of the State Tax Commissioner, after he has fixed the valuation in the way pointed out in sec. 141 as amended by the *Act of 1896*, ch. 120, to certify the same to the Comptroller, who is directed at once to notify the president or other proper officer of the company of the valuation, and if no appeal be taken within thirty days the valuation must stand.   But any corporation may appeal from the valuation to the Comptroller and Treasurer, and may then contest the assessment made by the State Tax Commis-

sioner.    This section does not in terms or by necessary, or
even remote implication, include the case before us.    To
bring the valuation fixed by the State Tax Commissioner on
distilled spirits—that is to say, to bring his action in execu-
tion of the law of 1892—within the operation of sec. 144,
we should have by construction, and a very strained con-
struction, to write into that 'section words which are not
there now ; and thus make it embrace a case not thought
of at the time of its adoption in 1878, or fourteen years be-
fore the duty to assess distilled spirits was placed upon the
Tax Commissioner.

Nor is the *Act of 1896*, ch. 322, applicable.    That Act
gives an appeal from the Appeal Tax Court to the Balti-
more City Court and from the latter to the Court of Appeals
in certain cases of assessments made by the Appeal Tax
Court and of failures on its part to reduce existing assess-
ments.    But as the Appeal Tax Court has no jurisdiction
to make assessments of distilled spirits or to review the
valuation of the State Tax Commissioner in any instance, no
appeal from it could possibly bring before the Baltimore
City Court, or to this Court, any decision made by the State
Tax Commissioner as to the value which ought to be placed
on distilled spirits for taxable purposes.    The difficulty
with the Act of eighteen hundred and ninety-two is that it
nowhere provides for a hearing before any tribunal  or offi-
cial on the question of valuation, and that there is no other
enactment which gives to the Appeal Tax Court, or to any
other Court or board, a right to hear that question on ap-
peal from the State Tax Commissioner.    The *Act of 1896*,
ch. 322, permits an appeal from the Appeal Tax Court, but
there is no appeal from the State Tax Commissioner to the
Appeal Tax Court to get his decision before it.

As there is no provision of law giving the distiller, the
warehouseman or the owner of the spirits the right to be
heard, either before the Tax Commissioner, or before any
other tribunal, on appeal from him, in respect to the valua-
tion to be placed on the property for the purposes of taxa-

tion ; it follows, according to all the authorities, that the tax sued for in this action cannot be recovered.   The *Act of 1892* is defective in failing to make provision for a hearing or for an opportunity to be heard ; but in other respects it is free from constitutional objections.   This defect is not cured by any other statute but it can be easily remedied by amendment.   As the General Assembly is now in session there need be no delay in adopting the proper provision. If the terms of sec. 144 were enlarged so as to permit an appeal from the Tax Commissioner's valuation on distilled spirits, to the Comptroller and Treasurer, in the same way that the section now provides for an appeal from valuations. on the capital stock of banks and other corporations ; or, if the statute should be amended so as to afford the parties affected an opportunity to appear at a designated time before the Tax Commissioner and then and there contest the valuation, the whole difficulty and the constitutional imperfection would be removed.

We ought to add that nothing we have said is to be taken as holding that taxes actually paid under the *Act. of 1892* can be reclaimed.   A tax payer may waive his right to be heard and if he voluntarily pays a tax which the Legislature had the power to impose but which, because of defects in the statute, could not have been collected by legal process, he cannot be allowed to complain that he had no notice of the assessment or had no opportunity to contest it.   Should the Legislature fail to amend the *Act of 1892* in the way we have indicated, or in some other equally effective manner, taxes hereafter levied on distilled spirits cannot be collected, if the collection of them be resisted by the persons who are charged with their payment.

The case, as it stands on the record, presents something of a dilemma.   It was tried on agreed facts, though not on a formal agreed statement of facts, and the agreement contains no stipulation authorizing a judgment to be entered for either party.   There were two prayers offered by the defendant.   Neither one of them touches the constitutional

question which we have just discussed. Both prayers were rejected, and were properly rejected, because they rested the defence upon the untenable grounds considered and disposed of in the first part of this opinion. Now, if we affirm the judgment because there was no error in refusing to grant the prayers, we affirm a judgment founded on an unconstitutional statute ; if we reverse it, we reverse, though there is no error in the rulings excepted to. But as we cannot affirm without overruling the constitutional objection, which we hold to be well taken, we must, as the only resort, reverse ; and as no recovery can be had in the face of that objection, a new trial will not be awarded.

> *Judgment reversed with costs above and below, without awarding a new trial.*

(Decided January 10th, 1900).