## THE MAYOR AND CTIY COUNCIL OF BALTIMORE *vs.* THE STATE OF MARYLAND—THE STATE OF MARYLAND *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Taxation—City Stock Held by National and Savings Banks Subject to State Tax——City Liable to the State for Said Tax—Statutory Assessment of Property and Notice—Competency of Witness—Interest on Unpaid Taxes.*

The City of Baltimore is required by Code (1888), Art. 81, sec. 91, to pay the State tax on its funded debt or stock held by individuals and the amount thereof is under the statute, to be deducted from the interest payable to the holder. By a municipal ordinance, the city agreed to pay the State tax without requiring reimbursement from the holders. *Held*, that although the primary obligation to pay the tax is that of the holders of the stock, yet the liability of the city for the tax is founded not only upon its agreement with the holders contained in the ordinance but also upon the express provision of the Code, and that liability may be enforced by the State in an action against the city.

The city stock held by national banks and corporations which pay State taxes on their capital stock and by savings banks, which pay State taxes on their deposits, is subject to the State tax on such stock, because under Code, Art. 81, sec. 96, the stock and loans of the city are excluded from the assessment of such corporations so far as relates to the State tax, the payment of the same being otherwise provided for, and also because Sec. 86A of Code, Article 81, declares that nothing in the law relating to the taxation of savings banks shall be construed as granting exemption from taxation to any property taxable under the laws of the State by reason of its ownership by a savings bank.

The assessment of property for taxation may lawfully be made by direct legislation as well as by authorized officials.

Personal notice to the person affected of the assessment of his property for taxation is not necessary. It is sufficient if notice be given by a law designating the time and place where parties may contest the justice of the valuation.

Under Code (1888) Art. 81, sec. 81 and secs. 151 and 170 of the City Charter;

the Register of Baltimore is directed to transmit to the Appeal Tax Court lists of the holders of all loans of the city. That Court strikes off the names of the holders exempt from taxation and gives to the State Comptroller a list setting forth the assessed value of the stock. Any person aggrieved by reason of an assessment by the Appeal Tax Court may appeal to the City Court for a review of the same. *Held*, that these provisions constitute a statutory assessment for taxation of the city stock and notice of the same to the holders thereof.

When a member of the Appeal Tax Court has officially certified that that Court assessed city stock for taxation at its face value, he cannot be allowed as a witness to testify that in his judgment what the Court did was not a legal assessment.

When under a statute, a municipality is bound to pay at a certain time to the State, the State tax on its funded debt, the municipality is also liable for interest on the taxes from the time when payable.

*Decided December 21st, 1906.*

Appeal from the Superior Court of Baltimore (SHARP, J.)

The cause was argued before McSHERRY, C. J., BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Sylvan Hayes Lauchheimer, Assistant City Solicitor,* (with whom was *W. Cabell Bruce, City Solicitor*), for the city of Baltimore.

*Wm. Shepard Bryan, Jr., Attorney-General* and *Edgar H. Gans,* for the State of Maryland.

SCHMUCKER, delivered the opinion of the Court.

These are cross-appeals from a judgment, in *assumpsit*, of the Superior Court of Bultimore City, in favor of the State of Maryland against the city of Baltimore for a portion of the State tax on city loans or stock for the year 1902. The city voluntarily paid the greater part of the tax for the year, but refused to pay the portion involved in this suit, upon the ground that it was not liable therefor because the holders of the stock on which it was claimed to be due were exempt from taxation thereon. The case was tried without a jury before SHARP, J., who found a verdict in favor of the State for

$20,266.72, the amount of the plaintiff's claim without interest, and entered judgment thereon.

The contention of the city is that it is not primarily liable for the State tax on its loans or stock, that being an obligation of the holders of the stock, but it is liable for the payment of the tax, if at all, only because it has bound itself by ordinance to pay all such tax for which the holders of the stock may be legally liable. It insists that, as its liability is only secondary, it cannot be required to pay the tax on any city stock held by national banks and corporations created by this State, which pay State taxes on their capital stock, or by savings banks, which 'pay State taxes on their deposits, and are therefore not required to pay such taxes on the city stock held by them.

The city makes the further and more radical contention that under existing laws none of the holders of city stock are liable for or can be made to pay State tax on their holdings. It insists that secs. 89 to 93 of Art. 81 of the Code of 1888 and secs. 151 to 154 of the City Charter, under which the taxes for 1902 are claimed to be due, are unconstitutional and void because, while they provide the machinery for the *payment* of the tax, they make no provision for the *assessment of the stock* or for notice and an opportunity to be heard.

The ground of the State's appeal is the failure of the Court below to allow it interest on the overdue taxes for which it was allowed to recover; the judgment having been rendered for the amount of the taxes without interest.

We will consider the questions thus presented by the record in the order in which we have stated them and will then pass upon the action of the learned Judge, before whom the case was tried below, upon the prayers submitted to him, at the trial.

The primary obligation to pay the State tax upon the funded debt or stock of the city is undoubtedly that of its holders as is the like obligation of the holders of other species of property. But the duty of the city to retain the amount of the tax from the interest due on the stock and pay it over to

the State does not arise solely or chiefly from its agreement with the stockholder to do so contained in the ordinance. Sec. 91 of Art. 81 of the Code of 1888 requires the city through its Register to pay the tax for the holders of the stock and directs the collection of it from them by the city by deducting it from the interest due and payable thereon to them. The city's contractual obligation *to the holders of its stock* to pay the tax for them without requiring reimbursement on their part rests upon the promise or agreement contained in its ordinances, but its obligation *to the State* to make the payment to it is a direct and statutory one imposed by sec. 91. The State has not only the power to tax all of the property within its borders but it has the power to prescribe the method and provide the instrumentalities necessary and proper for the collection of the taxes. *Faust* v. *Building Assn.*, 84 Md. 192; *Hull* v. *Southern Development Co.*, 89 Md. 8; *Monticello Co.* v. *Baltimore*, 90 Md. 426–7; *American Coal Co.* v. *Co. Commrs.*, 59 Md. 197.

In striking analogy to the method prescribed by law for the collection of the State tax now under consideration is the one which has for many years been employed by the State in collecting the tax due by the holders of shares of the capital stock of banks or other corporations created by this State or doing business therein, from such bank or corporation. The method adopted by the State under secs. 214 to 224 of Art. 81 of the Code, of requiring the payment of the tax, due from the owner of distilled spirits, to be paid by the distiller or the proprietor of the bonded warehouse in which such spirits may be stored is of a similar character. These two methods of taxation have been fully considered by this Court and held to be both reasonable and lawful. It has also been held by us that the duty and obligation of the corporation or distiller or bonded warehouse owner to pay the tax thus imposed upon them respectively by statute may be enforced by the State in a proper action at law. *American Coal Co.* v. *Co. Commrs.*, 59 Md. 198; *Hull* v. *Southern Development Co.*, *supra*; *Monticello* v. *Baltimore*, *supra; Fowble* v. *Kemp*, 92 Md. 638. By parity

of reasoning the obligation imposed, by sec. 89 to 93 of Art. 81 of the Code of 1888, upon the city of Baltimore to pay the State tax due from the holders of city loans on stock, must be held to be a direct statutory obligation for the breach of which an action at law such as the one now before us may be maintained.

. The city cannot escape responsibility for the payment of the taxes sued for in this case upon the ground that the owners of the stock on which the tax is due are exempt from taxation thereon within the meaning of sec. 90 of Art. 81 of the Code of 1888. The holders of this stock are State or National Banks or other incorporated institutions chartered by this State or doing business therein or savings banks. It is only necessary to properly understand the system adopted by the State for the collection of the tax imposed by it upon the holders of the capital stock of corporations of the character mentioned to see that the corporations are not exempt from taxation on city stock held by them.

Under the system of taxing property held by banks and other corporations, except savings banks, provided for in secs. 84 *et seq.* of Art. 81 of the Code of 1888, all of the property, of every kind, real and personal, of the corporation is in effect made to pay its just share of taxes and the corporation is exempted from taxation on none of it. As a matter of justice and convenience, the State, instead of levying the tax directly upon the property of the corporation, imposes it upon the holders of the capital stock who are the real owners of both the corporation and its property, and it adopts the value of the capital stock as the true measure of the value of the corporate property. The tax is required to be paid by the corporation which is for the sake of convenience made the agent of the State for its collection. Under such a system it cannot in any true sense be said that the corporation is *exempt from taxation* on any city stock of which it may from time to time happen to be the holder.

The State having thus required incorporated companies to pay to it directly the State tax due from the holders of their

capital stock and having also required the city through the Register to make direct payment into the State treasury of the State tax due from the holders of city stock or loans, it became necessary in order to prevent double taxation to make provision for the exclusion of those classes of securities from the ordinary assessments of property for taxation in the city and the several counties, so far as the State tax was concerned. Accordingly we find in sec. 96 the following enactment:

"The public debt of this State, stock loans of the city of Baltimore, the capital stock, bonds, certificates or other evidences of debt, bearing interest issued by incorporated companies or institutions of this State shall be excluded from the assessment in the several counties and the city of Baltimore, so far as relates to the State tax, *the payment of said tax thereon being hereinbefore provided for.*"

A slightly different method has been adopted by the State with reference to the State tax payable by savings banks. From the nature of the business conducted by banks of that description, which do not ordinarily have any capital stock, the entire assets of the institution must be represented by the total amount of its deposits invested and uninvested. Hence the State has adopted the policy of imposing on savings banks a tax of one-fourth of one per cent on the whole amount of their deposits without any deduction for the portion, if any, of the deposits invested in property which is non-taxable or on which some other persons or corporations are required by the laws of this State to pay taxes, but providing that such other persons or corporations shall not be entitled to exemption by reason of the ownership of the property by a savings bank. Sec. 86 and 86A of Art. 81, Code of 1888. *Westminster* v. *Westminster Savings Bank*, 92 Md. 62. The express provisions of sec. 86A, that nothing in the law relating to taxation of savings banks shall be construed as granting exemption from taxation to any property taxable under the laws of this State by reason or on account of its ownership by a savings bank, furnishes a complete answer to the contention of the city that its stock held by such institutions is exempt from

taxation.   We have not referred to the provisions of the law
relating to the taxation of the real estate and capital stock of
such savings banks as own real estate or have capital stock
because we do not deem them pertinent to the issue now un-
der consideration.

We now come to the contention of the city that secs. 89 to
93 of the Code of 1888 and secs. 151 to 154 of the Baltimore
City Charter are unconstitutional and void because, although
they contain full provisions for the payment of taxes levied
under them upon city stock, they make no provision for·the
assessment of the stock or for notice and an opportunity to be
heard.   Strictly speaking the only person who is entitled to
raise this objection is the holder of the stock who is the person
taxed.   If he is satisfied with the method in which the tax
has been . imposed upon him, the city, which in this connec-
tion acts merely as the agent of the State for collecting the
tax, cannot object to the action of its principal in levying it.
Assuming however, for the purposes of this opinion, that the
objection has been made by one entitled to raise it and that
the question thus presented is properly before us, let us in-
quire whether the law in fact provides for an assessment of
recognized legality.

A valid assessment is undoubtedly indispensable to the levy
of a tax such·as that now under consideration, but the re-
quirement of uniformity of taxation does not involve the mak-
ing of all assessments through the same officials or by a uni-
form method of procedure.   What is required is that the tax-
ation itself shall be uniform within the meaning of the Con-
stitution.   The nature, location and other characteristics of
the various kinds of property and interests subject to taxation
render inevitable some diversity of method in their assess-
ment.   The assessment may be made by duly authorized
officials or the State may make it directly by appropriate leg-
islative action.   In *Faust* v. *Building Association*, 84 Md. 186,
the validity of the provision in the Assessment Act of 1896,
imposing a tax on mortgages and mortgage debts of eight per
cent of the gross amount of interest covenanted to be paid to

the mortgagee was considered and passed upon by this Court. In that case it was said: "It will be noticed that the Legislature made the *levy of the tax* and the *assessment* of the taxed property by its own act without the intervention of any officer. Except as restricted by the Bill of Rights and the Constitution it has the absolute power of taxation over the property of the State. It has also the power to provide all the means and appliances necessary and proper for the collection of taxes. But no possible reason can be alleged why it cannot exercise its powers directly without resorting to intermediary functionaries. The constitution does not forbid it and no other department of the government can interfere to prevent it. In *State* v. *Mayhew*, 2 Gill, 487, it was regarded as unquestionably within the competency of the Legislature as settled by reason of long usage. And in *State* v. *Sterling*, 20 Md. 516, 517, it was said : "The duty of ascertaining taxable values and of assessing and collecting the taxes thereon necessarily rests in the discretion of the Legislature and it may perform that duty by its own legislative acts, or through the agency of such officers or tribunals as it may appoint for that purpose. *State* v. *Mayhew*, 2 Gill, 487. The legislative power to assess and compel payment of State taxes to be made directly to the State Treasurer without other official assistance, implies power to determine the value of the property to be assessed, and consequently a power of discrimination in selecting and fixing the taxable values. These powers have been so long exercised without objection, that they cannot be brought into question now, without contravening the settled policy of the State. *Tax Cases*, 12 G. & J. 117; *State* v. *Mayhew*, 2 Gill, 487." Faust's case has been cited with approval in *Allen* v. *Nat. State Bank*, 92 Md. 511, and *Baltimore City* v. *Safe Deposit Co.*, 97 Md. 662, and in *Westminster* v. *Westminster Sav. Bank*, this Court noticed without objection the fact that for more than fifty years the State has without objection treated the annual report required by law to be made by savings banks of their total deposits as an assessment and has levied the State tax thereon.

The subject matter of taxation in the present case consisting of the interest bearing loan of the city is the same in principle as the mortgage loans which formed the subject of consideration in Faust's case. It has been held by the Supreme Court of the United States and the Courts of last resort of a number of the States that a direct assessment by the Legislature, without the intervention of assessing boards or officers, of taxes upon solvent evidences of debt whose face value and actual value are practically the same, is valid and unobjectionable. See collection of cases under note 3, p. 663, vol. 27, 2 ed. *A. & E. Ency.*

Notice to the person affected and an opportunity to be heard at some stage of the proceedings is requisite to the validity of every assessment for taxation, but personal notice to him is not necessary. It is sufficient if notice be given by a law designating the time and place where parties may contest the justice of the valuation. *Monticello Co.* v. *Balto. City*, 90 Md. 428. The provisions of the law relating to the taxation of city stock furnish such a notice. Sec. 89 of Art. 81 of the Code of 1888 and sec. 151 of the City Charter provide that the City Register shall on each 1st day of May, July and September make out and deliver to the Appeal Tax Court of Baltimore City a full and accurate list of the holders of all loans of the city the interest of which is payable on such respective dates. The following section requires the Court to carefully examine and correct the list, by striking off the holders who are exempt from taxation on said stock and to annually deliver on or before the 1st day of September to the City Register one copy and to the State Comptroller another copy of the corrected lists *setting forth distinctly in said copy the assessed values of the stock mentioned therein.* There is here an authority and direction to the Appeal Tax Court to assess the stock, for an assessment is simply a valuation or a valuation and listing of property for purposes of taxation. 3 *Cyc.*, 1111; 27 *A. & E. Ency.*, 659; *Bouvier's Law Dictionary*, vol. 1, p. 177. Furthermore by sec. 164A of the City Charter the Appeal Tax Court is given power at any time to value

and assess both real and personal property and from time to time to revise its valuations and assessments.

Sec. 170 of the City Charter provides that any person or corporation assessed for real or personal property in the city of Baltimore and claiming to be aggrieved because of any assessment made by the Appeal Tax Court may appeal to the Baltimore City Court for a review of the assessment, and may have a further appeal from its decision to this Court. The presence of a similar provision in ch. 275 of the Acts of 1898 relative to appeals from the action of assessors of taxes in the counties to the Boards of County Commissioners was held in *Fowble* v. *Kemp*, 92 Md. 633, to afford to the tax payer the opportunity to be heard, requisite to the validity of assessments for taxation. The ruling there made applies with equal force to the present case. It thus appears that the method first adopted under the Act of 1844, ch. 234, for the assessment and collection of the State tax on city stock and followed without objection for so long, as appears from the record, as to have become the settled policy of the State, has all of the essential requisites of a valid and legal system of taxation.

It appears from the record that the Appeal Tax Court has uniformly mentioned the par value of the city stock as its assessed value on the lists annually sent by them to the Comptroller and the Register, and one of the members of that Court testified in the case that in preparing the list for 1902 the par value of the stock was noted in each case. He further testified against the objection of the State and subject to exception to the transactions in that connection of the Appeal Tax Court which in his judgment did not amount to a legal assessment. The State moved to strike out this testimony and the Court overruled the motion. The motion to strike out should have been granted. The witness should not have been permitted to contradict as a witness what he had officially certified to as a member of the Appeal Tax Court. *Matthews* v. *Dare*, 20 Md. 248; *Highberger* v. *Stiffler*, 21 Md, 350.

If we adopt the alternative view of the law, which was to some extent relied on by the counsel for the State, that the long continued practice without objection of the return by the Appeal Tax Court as the agent of the State, to the Register and Comptroller of the par value as the assessed value of city stock under the provisions of law to which we have referred is to be regarded as tantamount to a legislative assessment or a legislative recognition of a long standing assessment of the stock at that value, it equally follows that the city was under an obligation to pay the tax, which could be enforced in the present case.

The Act of 1896, ch. 143, made some slight changes in the details of the collection of State tax on city stock, but as secs. 89 to 92 of Art. 81 appear again in their original form in secs. 151 to 154 of the City Charter adopted by the Act of 1898, ch. 123, we have for convenience referred in this opinion to the sections of the Code.

Having thus fully reviewed the legal propositions involved in the case, and there being no controversy as to the material facts of the case which have been supplied by the agreed statement appearing in the record we deem it unnecessary to notice all of the prayers in detail.

The plaintiff offered four prayers, of which the Court granted the first three and refused the fourth.

The first three prayers assert in different forms that it being admitted that the city did not pay the State tax for 1902 on $9,907,100 of city stock held by national banks and other corporations chartered by or doing business in this State or on $2,140,500 of such stock held by savings banks incorporated in Maryland the plaintiff is entitled to recover seventeen cents on each one hundred dollars of the par value of such stock. These prayers were properly granted for reasons which we have already stated.

The fourth prayer asserted the right of the plaintiff to recover interest on the amount of the unpaid taxes from September 1st, 1902. It is sufficient to say that the learned Judge below was in error in rejecting this prayer. The coun-

sel for the city admit that if the State is entitled to recover it is entitled to interest on its claim.

The city as defendant below offered fifteen prayers, all of which were properly rejected, as they were all based on theories at variance with what we have held to be the law of the case.

For the error of the Court below in rejecting the plaintiffs fourth prayer the judgment appealed from must be reversed, the costs to be paid by the city; but as we have held the State entitled to recover both the principal of its claim and interest thereon at six per cent from September 1st, 1902, we will render judgment in this Court in its favor for $25,502.28, that being the amount of its claim with interest to date with costs.

> *Judgment reversed with costs to be paid*
> *· by the Mayor and City Council of*
> *Baltimore and judgment in this*
> *Court in favor of the State of Mary-*
> *land against the Mayor and City*
> *Council of Baltimore for $25,502.28*
> *and costs.*